**INDEPENDENCE FLYING SERVICE, INC.,**
Appellant,

v.

**John W. ABITZ and Vesta Ailshire,**
Respondents.

No. 50465.

Supreme Court of Missouri,

Division No. 1.

Jan. 11, 1965.

Motion for Rehearing or for Transfer to Court En Banc Denied Feb. 8, 1965.

Donald E. Raymond, Thomas M. Howell, Kansas City, Terrence C. Riley, Platte City, for appellant.

Walter A. Raymond and Raymond, West & Cochrane, Kansas City, S. Ralph Stone, Independence, for respondents.

HOUSER, Commissioner.

In this court-tried case Independence Flying Service, Inc., has appealed from a judgment rendered against it on Count III of its petition against Vesta Ailshire, lessor, and one John W. Abitz, in which plaintiff, lessee, sought $31,000 damages for conversion of personal property allegedly owned by lessee, consisting of certain hangars, buildings and other immovable structures and improvements located on the demised airport premises, and from a judgment rendered against it for $2,700 on lessor's counterclaim against lessee for unpaid rentals.

Lessee's petition charged that under the terms of the written lease the improvements could be removed by lessee but that defendants ousted lessee from possession under the lease and with threat of force refused to permit lessee to remove the improvements and refused to pay lessee therefor. Lessor answered, denying lessee's rights to any improvements on the leased premises, claiming that under the lease lessee's right of removal was made conditional upon full payment of the rent before the expiration of the lease and that lessee breached the condition by failing to pay the rentals reserved, and further violated the lease by subleasing the premises to defendant Abitz without lessor's knowledge or consent, in violation of a provision prohibiting subleasing, as a result of which lessee lost any rights of removal and lost any interest it had in the improvements, her theory being that lessor had a right to declare a forfeiture of the lease on the two grounds indicated and that she did so properly, as a consequence of which the lease was terminated and that the right of removal of the improvements expired with the termination of the lease.

We find the facts to be as follows: By a written instrument dated April 10, 1958 lessor demised to lessee a 60-acre tract of land for a term of 7 years beginning January 1, 1958, at a rental of $300 per month payable quarterly in advance, that is, $900 on January 1, 1958 and $900 on the first days of April, July, October and January of each year during the term of the lease. There was a provision that at the termination of the lease lessee may "remove all

improvements belonging to it provided ·its rental is fully paid and removal is made before the expiration of this lease * * *." In addition to other provisions there were four "covenants," the first and third of which related to the care of the premises and the regulation of signs, billboards and advertisements thereon.

Covenant 2 follows:

"2. To not sublet or allow any other tenant to come in with or under it or assign this lease or any part thereof by its act, process or operation of law, or in any other manner whatsoever without the written consent of the Lessor endorsed on this lease."

Covenant 4 follows:

"4. At the expiration of the term hereby created, or if default be made in the payment of rent after the same is due or upon the breach of any of the covenants and agreements herein contained, the Lessor or her agent shall have the right to enter and take possession of the leased premises, and the Lessee agrees to deliver same without process of law, and this lease, at the option of the Lessor, shall terminate, but for this cause the obligation of the Lessee to pay shall not cease and the Lessee shall be liable for any loss or damage to the Lessor for its failure to comply with the terms hereof."

Lessee entered possession under the lease, paid the first installment of rent, but at no later payment date did lessee pay in full the amount due. Payments for lesser sums than $900 were made, sporadically, but through thirteen months of occupancy after April 1, 1958 the rent was continuously delinquent to the extent of several hundred and finally several thousand dollars. In June, 1959 the arrearage amounted to $2,-700. Lessor repeatedly and frequently asked Mr. Morris, president of lessee corporation, to pay the rent. When the April 1, 1959 installment was not paid lessor called Mr. Morris, who told her that he could not pay the rent and told her to call Rolla Pen-

nell, a member of the board of directors, and talk to him about it. She called Mr. Pennell, who came to her home to discuss the matter, bringing his father, who was also on the board. This discussion occurred around April 1, 1959. The Pennells informed lessor that the corporation could not pay the rent because "John Abitz hadn't paid them." Lessee corporation had subleased the operational rights in the airport to Mr. Abitz January 1, 1959 without consulting with or obtaining the written consent of lessor. The Pennells refused to pay the rent and stated that they had put all the money into the corporation that they were going to put in. They did offer to buy lessor's "lease rights" in order to be in a position to gain control of the corporation and oust Mr. Morris, in which event they said they would pay the rent according to the lease. They informed lessor that all of lessee's equipment had been moved away from the leased premises and that Mr. Morris had moved to Excelsior Springs and was operating an airport there. Mr. Morris had obtained a lease on an airport in Excelsior Springs in March, 1959 and had taken over its management when the manager he employed proved unsatisfactory. Lessor investigated and confirmed the fact that Mr. Abitz had a sublease; that the lessee's airplanes had been removed, and that Mr. Morris was at Excelsior Springs. Lessee had taken everything it had on the premises for the operation of an airport, including the airplanes, except the hangars, buildings and permanent improvements which are the subject of this lawsuit, and a tractor. Lessor rejected the offer of the Pennells and pressed Mr. Morris for payment. When Mr. Morris came to lessor's home to discuss the situation he told her he could not pay the rent because John Abitz had not paid his rent and that she could not be paid unless the Pennells "came up with the money," but he promised to "see if he could get some money" to pay her. On May 25, 1959 Mr. Morris brought lessor a check for $400. In accepting the $400 check lessor told Mr.

Morris that it would be credited upon rentals past due since the fall of 1958. Messrs. Morris and Pennell testified that lessor told them that, based upon that payment, she was "willing to go along" with them; that she told them that if they can "continue to do this, you will be all right down there." This was not denied by lessor and we find as a fact that as of May 25, 1959 lessor indicated her willingness to accept the situation and continue under the then-existing arrangement, including the sublease of which she had knowledge since around April 1, 1959. Mr. Abitz' operation of the airport was not successful. He was several thousand dollars delinquent in the payment of rentals reserved under his sublease. On June 12, 1959 lessee caused a letter to be written to Mr. Abitz, declaring the sublease void and the term under it ended "under paragraph 12" for default in the payment of rent, and asking Mr. Abitz to surrender and not remove his equipment, fixtures, etc. from the premises until his account was finally settled. Mr. Abitz informed lessor of the receipt of this notice. Lessor suggested that she and Abitz "take everything up to the attorney" and "get this thing straightened out." The two consulted her attorneys, after which one of her attorneys wrote lessee's attorney a letter on June 17, 1959 notifying him as representative of Independence Flying Service that lessor thereby declared the lease between Independence Flying Service and Vesta Ailshire terminated "because of non-payment of rent and for other violations by the lessee of the lease agreement." The "other violations" were not specified, and there was no demand for the rent then due, although there was a recital in the letter that the attorney writing it "understood" that "there is a deficiency as of this date of $2,600.00 plus a $100.00 deficiency for hangar rent to July 1, 1959." Lessee was requested to immediately "surrender the premises to the lessor" and not to remove from the premises any of its fixtures, equipment, books of account or other items of personal property until a complete settlement of all unpaid rentals then due and yet

due and payable under the lease was made. Lessor's reasons for terminating the lease were that lessee was behind with the rent; that the directors of lessee corporation were fighting among themselves; that neither the Pennells nor Mr. Morris would pay the rent; that lessee was "not there" operating the airport, and that, following the action of lessee in attempting to cancel the sublease, there was no reasonable prospect of getting rent through payments made by Mr. Abitz thereunder. Lessor took over possession and operation of the airport, and left instructions with Mr. Abitz (who was permitted to stay on for a while) that Mr. Morris was not to be permitted on the premises and that nothing was to be removed. Shortly after June 17, 1959 Mr. Morris appeared at the airport. He was told by Mr. Abitz that he no longer had a right to come on the premises. Mr. Abitz demanded that he leave. Lessor was informed by telephone that Mr. Morris was at the airport, "throwing things out of the office." Lessor called the sheriff, who later reported that he went to the airport but that Mr. Morris was gone when the sheriff arrived.

Appellant has abandoned its contention that the court erred in entering judgment for lessor on her counterclaim for rent.

Addressing ourselves to the propriety of the judgment entered on Count III of lessee's petition for damages for conversion, and having reviewed the case upon both the law and the evidence, we are of the opinion that the judgment must be set aside.

There is no question that lessor appropriated lessee's property, assumed control over it, and denied lessee's rights therein, under circumstances which would constitute a conversion, absent a right in lessor to declare a forfeiture. Neiswanger v. Squier, 73 Mo. 192; 32 Am.Jur. Landlord and Tenant § 241, p. 226; 51 C.J.S. Landlord and Tenant § 319, p. 994.

■ Nor is there any question that lessor had a right to declare a forfeiture for nonpayment of rent and for breach of the covenant not to sublet the premises.

Forfeiture of a lease for breach of a covenant or wrongful act of a tenant, however, is a harsh remedy, "liable to produce great hardship, if not oppression," Carbonetti v. Elms, Mo.App., 261 S.W. 748, 751 [5], and is not favored by the courts. Haeffner v. A. P. Green Fire Brick Co., Mo.Sup., 76 S.W.2d 122. A covenant permitting a forfeiture will be strictly construed against the party invoking the forfeiture, Frank v. Dodd, Mo.App., 130 S. W.2d 210, and in favor of the lessee. 51 C.J.S. Landlord and Tenant § 102, pp. 677, 678; 32 Am.Jur. Landlord and Tenant § 848, p. 721. "[T]o effectuate such a forfeiture every requirement of the common law must be scrupulously observed, unless waived by agreement." Carbonetti v. Elms, supra, 261 S.W., l. c. 751 [5].

We are of the opinion that lessor did not observe the requirements of the common law in the enforcement of her right to declare a forfeiture for nonpayment of rent. It is the well-established rule of the common law that "[t]o work a forfeiture of a leasehold estate at common law for non-payment of rent there must be a notice of forfeiture and a demand for the payment of the rent. Carbonetti v. Elms, Mo.App., 261 S.W. 748 and cases cited; 51 C.J.S., Landlord and Tenant, § 114 b, p. 694; Taylor's Landlord and Tenant, Ninth Ed., Vol. 1, § 297, p. 362; Thompson on Real Property, cit. supra, [Perm. Ed., Vol. 3, § 1459], and § 1471." Waring v. Rogers, Mo.App., 286 S.W.2d 374, 379 [20]. Under the strict requirements of the common law "the demand for rent must be made precisely on the very day when the rent becomes due, and for the precise amount due. Carbonetti v. Elms, supra, and numerous cases cited; Jones, Landlord and Tenant, § 503; Tiffany on Landlord and Tenant, Vol. 2, § 194; Thompson on Real Property, Perm. Ed., Vol. 3, § 1483; 51 C.J.S., Landlord and Tenant, § 114(2), p. 696." Waring v. Rogers, supra, 286 S.W.2d, l. c. 379 [20]; 32 Am.Jur. Landlord and Tenant §§ 857, 858. Lessor's letter of June 17, 1959 did not contain a demand for the payment of rent, and the demand therein contained (a demand for the surrender of the premises) was not made on any day when the rent became due. The only days of the year when the rent became due under the lease were the first days of April, July, October and January. The lease made no provision for the making of any other or different demand or notice of forfeiture than that required by the common law, and there was no provision in the lease for the waiver of these requirements. (The lessee's agreement in Covenant 4 to deliver the possession of the premises "without process of law" is no waiver of the formality of notice, as contended by lessor. "Process of law" as there employed refers to legal process issued by a court, executed by an officer of the law, for the enforcement of the right to possession, following the entry of a court judgment.) Lessor has not shown herself entitled to forfeiture of the lease on the ground of nonpayment of rent, and the attempted forfeiture on this ground will not be enforced.

Nor is lessor entitled to the enforcement of a forfeiture for breach of the provision of the lease prohibiting the subletting of the premises without her written consent. Lessor asserted only one ground of forfeiture, namely, nonpayment of rent. Her letter declared the lease terminated "for non-payment of rent and for other violations by the lessee of the lease agreement," but the generality "other grounds" is insufficient notice of forfeiture on the ground of violation of a covenant against subletting. Lessee is entitled to know specifically upon what grounds lessor asserts the right to declare a forfeiture. "The assertion of one ground of forfeiture, so as to terminate the tenancy, precludes the right to rely on another ground which existed at the same time, in an action involving a question of forfeiture." 51 C.J.S. Landlord and Tenant § 117, p. 701. Having first asserted this ground of forfeiture in her answer to the suit for conversion she is estopped to claim a forfeiture on this

ground. Panas v. Bopp, Mo.App., 16 S.W. 2d 654 [2]. Furthermore, lessor waived a forfeiture on this ground. "Generally speaking, any recognition by a lessor of a tenancy as subsisting after a right of entry has accrued, where the lessor has notice of the forfeiture, will have the effect of a waiver of the landlord's right to a forfeiture of the leasehold. Slight acts on the part of a lessor may be sufficient. Indeed, it has been ruled that any act on the part of the lessor, by word or deed, with knowledge of what has been done, which signifies his intention to affirm the lease, is conclusive evidence of a waiver of the forfeiture." 32 Am.Jur. Landlord and Tenant § 882; 51 C.J.S. Landlord and Tenant § 117 c (1). From about April 1, 1959 lessor had knowledge that lessee had subleased the premises to Mr. Abitz. With this knowledge lessor, in accepting the back payment of rent on May 25, in effect assured the president and a board member of lessee corporation that as long as rent payments were kept up lessee would not be disturbed in its possession, thereby affirming the existence of the lease and recognizing lessee as her tenant. Furthermore, the right to forfeit for an unauthorized subletting may be waived where the lessor takes no steps to enforce the right of re-entry on that ground for several months after the subletting. 51 C.J.S. Landlord and Tenant § 117 c (1), p. 704. Here lessor waited to first claim a forfeiture on this ground from April 1 until the date of the filing of her answer in the suit filed months later. She did not act promptly to make known her intention to forfeit for breach of the covenant against unauthorized subletting.

Instead of dispossessing lessee and recovering the rent due by the simple method of statutory forfeiture provided by Chapter 535, R.S.Mo.1959, V.A.M.S., lessor invoked the harsh remedy of common law forfeiture, seeking not only to terminate the lease, re-enter the premises and recover the rent, but also by excluding lessee to take over and convert to her own use the valuable improvements thereon belonging to lessee. This she had a legal right to do but in pursuing that course she is held to the scrupulous observance of every requirement of the common law. Waring v. Rogers, supra; Carbonetti v. Elms, supra; Knight v. Orchard, 92 Mo.App. 466; Thompson on Real Property, Perm. Ed., Vol. 3, § 1462, p. 703. For the reasons given lessor, having failed to meet these requirements, may not have the fruits of her abortive attempt to enforce a forfeiture. Her re-entry under the circumstances was wrongful and in forcibly excluding lessee from the premises and denying its rights in the improvements defendants were guilty of conversion.

The judgment on the counterclaim is affirmed. The judgment on Count III of the petition is reversed and the cause remanded for proceedings to assess lessee's damages.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

HYDE, P. J., and HOLMAN and HENLEY, JJ., concur.

DALTON, J., absent.