**William L. POLLOCK and Winifred Pollock, Respondents,**

v.

**Clifford P. ADAMS and Maxine Adams, Appellants.**

**No. 28468.**

Missouri Court of Appeals, Kansas City District.

Feb. 28, 1977.

Erwin L. Milne, Stockard, Andereck, Hauck, Sharp & Evans, Trenton, for appellants.

E. Leroy Miller, R. Max Humphreys, Allan D. Seidel, Miller, Humphreys & Seidel, Trenton, for respondents.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

Action by lessees of restaurant premises against lessors for declaratory judgment to declare right of parties to real and personal property leased and to declare lessees' right to continued possession and use of real and personal property. Lessors counterclaimed and asked for forfeiture of lease for breach of terms of lease by lessees. Trial court found for lessees and declared that they were entitled to continue in possession of premises under terms of lease. Judgment was rendered against lessors on counterclaim. They have appealed.

Clifford P. Adams and Maxine Adams are owners of the Lakeview Motor Lodge in the City of Trenton, Missouri. On July 1, 1972, they entered into a lease agreement with William L. Pollock and Winifred Pollock covering the cafe building at the lodge, less the motel office in a corner of the building. The lease was for a term of three years, with a right to renew for an additional five years, a right of which the lessees took advantage.

In 1973 or 1974, the sale of liquor by the drink was authorized in Trenton and the lessors installed bar facilities in the restaurant. According to Mr. Adams, he intended only a service bar operation, with the service of liquor to the dining room customers. When the lessees closed sliding doors between the dining area and the bar and began operation of a cocktail lounge, disagreement arose between the parties.

On March 27, 1975, lessors caused notice to be served upon lessees, terminating the lease and calling for the delivery of possession to lessors on May 1, 1975. When lessees failed to do so, proceedings were begun in the Grundy County Magistrate Court, alleging violations of terms of the lease by the lessees which entitled the lessors to terminate the lease, and asking for judgment requiring the lessees to surrender possession of the premises. Upon a trial, the magistrate found in favor of the lessees.

On July 5, 1975, lessors again caused notice of termination to be served upon lessees, charging violation of terms of the lease agreement. The lessees responded with this action to obtain a declaration of their right to continued possession and the lessors counterclaimed for possession and damages.

After a trial at which Mr. Pollock and Mr. Adams testified and photographic and documentary evidence was presented, the trial court entered its judgment favorable to lessees, declaring that they were entitled to remain in possession for the term of the lease provided they fulfilled their obligation under the terms of the lease and did not violate any of its conditions. The court further found that the installation of the bar facilities was pursuant to an oral modification of the lease, effective for its term, and denied to lessors the right to remove facilities added pursuant to such oral modification.

In this court appellants assert that the trial court's finding that respondents were entitled to remain in possession of the premises for the remainder of the term of the lease was not supported by the evidence. Appellants assert that the evidence showed three distinct breaches of the lease which entitled them to terminate it. The breaches relied upon were:

1. Failure to pay rent in accordance with lease.
2. Making of alterations by lessees without prior approval of lessors, in violation of terms of lease.
3. Refusal to permit lessors to inspect, in violation of terms of lease.

The rent called for by the lease was 10% of gross receipts under $15,000 per month and 7% of gross receipts over $15,000 per month, payable on the first day of each month.

According to Mr. Adams, payments were not made regularly on the first day of the month. The time of payment depended upon how soon the bookkeeper got the calculations made of the prior month's business. Cancelled checks in payment of the rent from January, 1974 to September, 1975, showed some checks dated as late as the 16th of the month, with only three checks dated the first of the month—May 1, 1975, July 1, 1975 and August 1, 1975. The evidence was that the August check was not delivered until after the first.

Insofar as appears, no question was raised about failure to pay rent on the first of each month until June, 1975. At that time, when renewal of the lease was under discussion, the Adams's attorney wrote the Pollocks' attorney and stated that upon renewal lessors would insist upon strict compliance with the terms of the lease, including payment of the rent on the first day of the month. Pollock denied that he saw the letter.

According to Pollock, for the first two months after the magistrate court case, Adams was in his office the first day of the month to see whether Pollock had the rent check for him. Adams testified that, on August 1, 1975, he asked Pollock if he had a check and Pollock told him that the bookkeeper hadn't prepared it. He told Adams, "I'll get it for you before long." The check was not delivered until the 3rd or 4th of the month. The check for rent for the month of August, 1975 was dated September 4, 1975.

The notice of termination dated July 2, 1975 made no reference to late payment of rent. In their counterclaim, appellants alleged a demand for payment on August 1, 1975 of rent and failure to pay on such date as a breach of the lease, entitling them to possession of the premises. The lease provided that default in the payment of rent entitled the lessor to take possession.

The trial court found that failure to pay the rent on August 1, 1975 was not a substantial violation of the lease and that any breach in that respect was waived by acceptance of late payments.

■ Appellants have not shown that the court's finding of waiver was erroneous. There was no evidence of any notice of forfeiture based upon this alleged breach of covenant. The evidence did show payment and acceptance of the rent on August 3 or 4. Absent prior notice of forfeiture on such basis, acceptance of the rent at that time without objection waived any right to forfeiture for the late payment. *Lucas Hunt Village Co. v. Klein,* 358 Mo. 1054, 218 S.W.2d 595, 598[4, 5] (banc 1949). The only evidence of notice of forfeiture at the time the rent was paid was that of July 2, 1975, which did not include the late payment of rent. That notice would preclude the acceptance of the rent in August from constituting a waiver of those specified grounds of forfeiture, *Lucas Hunt Village Co. v. Klein,* supra, but such notice could not be extended to include the further ground of nonpayment of rent, which arose later.

■ Although the court's finding is couched in terms of waiver, the court also noted that in ruling the case it had considered the case of *Independence Flying Service, Inc. v. Abitz,* 386 S.W.2d 399 (Mo. 1965). That case holds that a common law forfeiture of a lease for nonpayment of rent requires a notice of forfeiture and a demand for payment of the rent on the precise day that it becomes due and for the precise amount due. 386 S.W.2d at 404[5–7]. In this case there is no evidence of notice of forfeiture. No unequivocal demand for rent was made on the date it was due. Adams testified that on August 1, 1975 he merely asked Pollock, "Do you have a check for me?" This is not a demand such as will support a right of forfeiture. The inadequacy of the demand obviates the necessity of considering the problem of failure to demand the exact amount of rent due. Appellants point out that they would not be in a position to know the exact amount because it was dependent upon respondents' gross income for the preceding month. That fact would not excuse a demand for payment in unequivocal terms.

The trial court did not err in refusing to order a forfeiture of the lease for failure to pay the rent on the exact date that it was due under the terms of the lease.

■ Appellants assert that the respondents violated the covenant against alteration of the premises and that the trial court erred in finding that the alteration involved was not a substantial violation, entitling appellants to forfeit the lease.

By the lease, the lessees agreed "To make no alteration in the premises without the consent of the lessor in writing, except ordinary repairs * * *."

According to Pollock, there was always access to the restaurant area through the motel office. The restaurant supplies were kept in an unenclosed area and some disappeared from time to time. Pollock said that he discussed the situation with Adams and Adams had no objection to "locking off" the supply area and suggested a door between the kitchen and the storage area.

Without obtaining approval of Adams, Pollock erected a 2″ × 4″ framing on the walls of the storage area and partitioned off the area by installing a door. Chicken wire was nailed to the facing in the area not covered by the door. Photographs introduced at the trial show that the partition extends across an area some 6′ in width. The partition is high enough to accommodate the door but does not extend to the ceiling.

Adams also complains that Pollock installed a hasp on the office door of the restaurant. The hasp is attached to the door frame with screws and a padlock is used to lock the office door. This was done without Adams's consent.

The trial court found that these alterations had been made but that they were not substantial enough to warrant a forfeiture.

The trial court's conclusion was not erroneous. The partition was obviously a temporary structure, consisting of perhaps six

2″ × 4″ pieces, a door and chicken wire. The partition was fixed by nailing 2 × 4's to the wall. Removal would be a minor matter. The same is true of the hasp used as a locking device for the office door. Neither constituted a change in the basic structure of the leased premises, as did the removal of a partition in the case of *Levin v. Hamilton,* 240 Mo.App. 764, 218 S.W.2d 131 (1949), cited and relied upon by appellants.

■ Finally, appellants contend that the trial court erred in failing to declare a forfeiture for violation by respondents of the covenant permitting inspection of the premises by appellants.

Under the lease, the lessees agreed to "permit the lessor or agent to enter at all reasonable times to view the premises and make such repairs and alterations as said lessor may deem necessary or proper; * * *."

Following the disputes about respondents' use of the bar area, on July 1, 1975, Adams saw Pollock in the kitchen of the restaurant and the following occurred:

"I asked Mr. Pollock for the key to the bar and he said, 'What do you want the key for?' and I said, 'I want to take some of the equipment out of there. You haven't been operating the bar the way we agreed upon.' He said, 'I can't let you do that, can't let you have the key.' And I said, 'Well, I want to understand this correctly.' I said, 'You're refusing me entrance into my building to make alterations I feel are necessary; is that correct?' And he said, 'Yes, it is.'

\* \* \* \* \* \*

"I just wanted to remove my sink and cocktail units and beer cooler and things like that I had put in so he could operate this liquor by the drink deal that we had agreed upon, and he hadn't lived up to his agreement as to how he was going to operate it and so I had told him before then that if he didn't I was going to take my equipment out."

Pollock agreed that this had occurred. He said that Adams had never otherwise requested permission to inspect the premises. He said he told Adams that he would permit him to enter any time to inspect the premises or make repairs but not for the purpose of removing equipment.

The trial court's finding that the purpose for which Adams sought entry on July 1 was not a purpose for which the lessee was required to permit entry under the terms of the lease was not erroneous. Adams obviously was not seeking to make repairs or alterations as contemplated by the lease. He was trying to impose his will as to how the bar portion of the business should be operated. A denial of entry for such purpose was not a violation of the lease.

■ Appellants next contend that the trial court erred in concluding that there had been an oral modification of the lease to include facilities added to the premises by appellants during the term of the lease and that appellants were not entitled to remove such facilities during the term of the lease. Appellants complain that there was no evidence from which such conclusion might be arrived at, particularly with respect to the new table and chairs provided by appellants when the restaurant was enlarged and the bar equipment.

The lease is silent with respect to its application to personal property. It is evident, however, that the parties treated the transaction as one for the leasing of an operable enterprise. Tables, chairs and kitchen equipment were provided from the outset. When the restaurant was enlarged, appellants provided additional tables and chairs. They point out that respondents did not contribute to the cost of these items. It also may be noted that appellants did not claim to have asked them to do so. Rather obviously, appellants received additional rent upon the enlargement of the premises as the additional business would increase the gross receipts on which the rent was based. The same is true of the bar facilities.

Although there is reason to agree with appellants' argument that evidence of oral agreement with respect to the personal property is lacking, nevertheless the parties

by their conduct and operation under the lease have provided an adequate basis for the trial court's conclusion. The parties have understood that the transaction involved the use of the furnishings provided by the lessors. The lessors voluntarily enlarged the premises and provided additional furnishings without seeking any change in the terms of the lease. They should not now be permitted to back out of the arrangement because of a difference of opinion as to how the business should be operated.

Judgment affirmed.

All concur.