Bobie SMILEY, Plaintiff-Respondent,

v.

Floyd C. CARDIN, Defendant-Appellant.

No. 13084.

Missouri Court of Appeals,
Southern District,
Division One.

July 20, 1983.

Loren R. Honecker, Sherwood, Honecker & Bender, Springfield, for plaintiff-respondent.

Joseph A. Bohrer, Yates, Mauck, Robinett & Bohrer, Inc., Springfield, for defendant-appellant.

TITUS, Judge.

Plaintiff on October 18, 1982, filed her petition seeking $600 actual and $50,000 punitive damages against defendant because the latter had "intentionally, willfully, unlawfully, maliciously, and without just cause or excuse" converted a washing machine, refrigerator and two stoves belonging to plaintiff to his own use. Albeit defendant was personally served, he did not plead or otherwise appear in the cause. On November 30, 1982, the court entered its interlocutory judgment of default and on the following date, after hearing plaintiff's testimony, entered a judgment for plaintiff awarding her $600 actual and $10,000 punitive damages. Defendant's motion to set aside the default judgment was filed December 29, 1982. After hearing defendant's testimony on December 30, 1982, the court overruled his motion and this appeal ensued.

Plaintiff's petition and evidence showed that in September 1982 she moved from a Springfield apartment rented from defendant and discovered that defendant had taken the above named appliances. When plaintiff asked defendant to return her property, he "just kind of snickered" and said he would do so when paid some back rent he claimed she owed. Thereafter plaintiff's lawyer wrote defendant demanding the return of the appliances but obtain-

ed no response. Plaintiff then, for the second time, asked for the appliances but received from defendant another "snicker" and assurances the items would be returned when plaintiff paid her debt.

In addition to the foregoing, plaintiff related how she was caused to incur expenses to compensate for the absence of the appliances and how her credit rating was adversely affected because the additional expenses precluded her from maintaining mortgage payments on the taken appliances.

While testifying on his motion, defendant acknowledged being personally served in the case on October 27, 1982. He said he intended taking the served papers to his lawyer but "just absolutely forgot it." Defendant said the reason he forgot was that he was then involved in a divorce and was "closing out a couple of stores" in addition to operating five other out-of-town businesses which required his absence from Springfield four days a week. Defendant contended he had obtained a $390 judgment for apartment rent against plaintiff and it was his personal belief he had a right to keep the appliances on the same property until the judgment was satisfied. On cross-examination defendant acknowledged that in his 20 years experience of renting property, he had secured judgments against delinquent renters and was aware "that it's the Sheriff who does executions." Defendant said he knew the law "provides for certain exemptions for certain property with respect to executions" and acknowledged his domestic relations case "had been on file long before" he was served in the present suit. He also admitted he had conferred with his lawyer in the divorce case on several occasions after being served in the instant action but did not tell counsel of the lawsuit brought by plaintiff because "I just forgot it." Defendant admitted it was careless of him to forget about the lawsuit when he did not forget about the divorce case or tending to his rental properties or businesses located in various cities. Defendant recalled a telephone conversation and explanation from plaintiff's counsel that he was legally bound to return to plaintiff the property he had come by through self-help. When asked if he remembered that in the course thereof he had told the lawyer to "Go fuck yourself," defendant replied, "I sure do."

■ In view of defendant's lone point relied on, infra, we are uncertain if indeed his appeal is from denial of his motion to set aside the default judgment. If so, the principles applying thereto are well enumerated in *Davis v. Moore,* 610 S.W.2d 665, 669[3–4] (Mo.App.1980). Under such principles we may not interfere with the ruling of the court nisi unless the record discloses that the trial court abused its discretion and rendered a judgment which was erroneous. To be entitled to a reversal of the trial court's refusal to set aside its judgment against a defaulting defendant, the defaulter must show as basic prerequisites that he had a meritorious defense and that good reason or excuse existed which could explain away the default. *Schoenhoff v. Owens,* 564 S.W.2d 273, 275[2] (Mo.App.1978). Defendant's carelessly forgetting he had been sued does not constitute good reason or a valid excuse for the default. Likewise, his claim of a right to set off the alleged delinquent rent judgment does not amount to a showing of a meritorious defense to plaintiff's claims. Such being the case, we may not hold that the trial court abused its discretion in refusing to set aside the default judgment, or rendered a judgment which was erroneous.

Turning to defendant's point relied on he is, in essence, claiming the trial court erred by awarding plaintiff $10,000 in punitive damages because plaintiff's evidence (1) did not show damages to plaintiff upon which such a sum could be based, (2) failed to establish that defendant's acts were characterized by actual malice or that defendant willfully and wantonly attempted to injure plaintiff and (3) was as consistent with a good faith mistake by defendant as with actual malice.

■ From reading the argument portion of defendant's brief anent (1), supra, we gather he is contending that plaintiff's

proof justified nothing more than an award of nominal actual damages and this would not suffice to support an award for punitive damages. In part, the argument is predicated upon the fact that there was no explicit evidence showing the value of the items taken by defendant in his self-help execution and therefore, at most, only nominal actual damages were proved. This ignores the repeated court holdings that the owner of personal property is qualified by that fact alone to give an opinion as to the value of that property [*Boten v. Brecklein,* 452 S.W.2d 86, 95[17] (Mo.1970)] and that plaintiff testified her property taken by defendant had a value of $600. Plaintiff, as previously noted, testified how defendant's acts in depriving her of the appliances caused her to incur expenses to secure replacements and to acquire a poor credit rating since in paying for the replaced items she was financially unable to make the mortgage payments on the things sequestered by defendant. Punitive damages are awarded for punishment and deterrence, and there is no fixed relationship between the amount of actual damages and the amount of punitive damages. A showing of malice in combination with a recovery of nominal actual damages will support a punitive award—the only requirement being that the punitive damage award must merely bear some relation to the injury inflicted and the cause thereof. *Ross v. Holton,* 640 S.W.2d 166, 174[17–18] (Mo. App.1982).

██ As to defendant's claim (2), supra, that plaintiff's evidence failed to establish actual malice, as opposed to legal malice, on defendant's part or that defendant willfully and wantonly intended to injure plaintiff, we note again that, per Rule 55.20, V.A. M.R., plaintiff's petition alleged generally that defendant had converted her property "intentionally, willfully, unlawfully, maliciously and without just cause or excuse." The effect of the default on defendant's part served as an admission by him of all traversable allegations of fact contained in the petition, including the allegations of actual malice. *Maynard v. Maynard,* 601 S.W.2d 649[1] (Mo.App.1980).

██ But aside from the foregoing, the facts were enough for the trial court to find the existence of legal malice or actual malice or both. Per MAI 16.01, legal malice "does not mean hatred, spite or ill will . . . but means the doing of a wrongful act intentionally without just cause or excuse." On the other hand, actual malice exists when defendant with a sedate, deliberate mind and formed design injures another when actuated by spite or ill will in what he says and does with a design to willfully or wantonly injure another. *Holcroft v. Missouri-Kansas-Texas R. Co.,* 607 S.W.2d 158, 162[2] (Mo.App.1980). Without repeating the evidence in detail, defendant's treatment of plaintiff after being advised by counsel, both by letter and telephone, that he was withholding plaintiff's property illegally and defendant's admitted obscene direction to the attorney, demonstrates the spite and ill will which motivated defendant's conduct in the matter. In deciding the award of punitive damages the fact trier, inter alia, may consider the financial worth of the defendant, for the amount of the award should be sufficient to punish the wrongdoer and deter him and others from similar wrongful conduct in the future. *Owen v. Owen,* 642 S.W.2d 410, 415[18] (Mo. App.1982). Although there was no direct evidence of defendant's financial worth, the court was made aware of defendant's large business operations and could reasonably conclude that a smaller award of punitive damages would have little deterrent effect. *Snodgrass v. Headco Industries, Inc.,* 640 S.W.2d 147, 158 (Mo.App.1982).

██ Defendant's last attack on the award of punitive damages is that "plaintiff's evidence was as consistent with a good faith mistake by the defendant as with actual malice." This seems to be predicated on defendant's assertion to the court nisi, which it did not have to believe, that it was his "understanding as long as it was left on that property it was all right" to seize and hold plaintiff's appliances. We assume this was an attempt to demonstrate a simple good faith ignorance or mistake as

to the wrongfulness of defendant's act which, it is said, constitutes a defense to the award of punitive damages. *Ozark Wood Industries, Inc. v. First Nat. Bank of Doniphan,* 625 S.W.2d 651, 654[13] (Mo.App. 1981). Of course, such a pronouncement flies in the face of the presumption that everyone knows the law and the fact that order could not exist if everyone at will could interpose his ignorance of the law in defense of his wrongdoings. *Hartley Realty Company v. Casady,* 332 S.W.2d 291, 295[4] (Mo.App.1960). But be the foregoing as it may, defendant's argument to this point ignores his history in similar legal matters, his admission "that it's the Sheriff who does executions" on judgments and his acknowledgment of the letter from and conversation with plaintiff's counsel advising him that his self-help approach was wrong and illegal. It is defendant's admitted self-help approach that constitutes the intentional, wrongful act justifying punitive damages. *Young v. Mercantile Trust Co. Nat. Ass'n,* 552 S.W.2d 247, 251 (Mo. App.1977).

Judgment affirmed.

FLANIGAN, P.J., GREENE, C.J., and CROW, J., concur.