**In re Ricardo Andres FERRO, Debtor.**

**Bankruptcy No. 98–21451.**

United States Bankruptcy Court,
W.D. Missouri.

Jan. 11, 1999.

John C. Reed, for debtor.

F. Randall Waltz, III, for respondents.

Richard V. Fink, Chapter 13 Trustee.

## MEMORANDUM ORDER

FRANK W. KOGER, Chief Judge.

This matter is before the Court on the Motion to Require Surrender of Property of the Bankruptcy Estate by John C. Wright, III, Individually and as Attorney in Fact for Vergie G. Wright (hereinafter "Motion to Surrender"), filed by the debtor, Ricardo Andres Ferro, and on the Objections to Respondent's Brief and Motion to Strike Exhibits (hereinafter "Motion to Strike"), also filed by Ferro following a hearing on the Motion to Surrender. For the following reasons, the Court will grant the Motion to Strike and will grant the Motion to Surrender. The Court will order John C. Wright, III, acting individually and as attorney in fact for Vergie G. Wright, to surrender to Ferro the real property and business assets of Wright's Studio seized by John C. Wright, III, acting individually and as attorney in fact for Vergie G. Wright, on or about the dates of October 8,

1998, through October 12, 1998, with the exception of the supplies and equipment specifically identified in Exhibit A to a Sales Contract dated January 22, 1985, entered into between Vergie G. Wright as seller and Ricardo A. Ferro as buyer.

## Facts

On January 22, 1985, pursuant to a written Sales Contract, Ferro purchased from Vergie G. Wright the business and assets of Wright's Studio, located at 318 South Maple, Eldon, Missouri, specifically identified as the "goodwill of said business, including the right to the exclusive use of the name Wright's Studio, and the telephone listing and the right to continue the use of the same telephone number," and "[a]ll of the supplies and equipment of said business which are listed on the schedule which is annexed hereto and designated 'Exhibit A.'" Ferro also contracted to use at the will and pleasure of Vergie G. Wright for no additional cost or compensation, specific items of furniture and fixtures of the business that were listed on a schedule annexed to the Sales Contract and identified as Exhibit B; to use the files of negatives of the business subject to the right of Vergie G. Wright to regain and dispose of the negatives at any time upon her request; and to use the display photographs on display at the business premises subject to the right of Vergie G. Wright to regain and retain or dispose of the display photographs at any time upon her request.[1]

Upon closing the Sales Contract, Ferro paid $3000.00 cash and signed a Promissory Note dated February 1, 1985, for the balance of the purchase price in the amount of $7000.00. The Promissory Note required interest-only monthly payments for the first six months in the amount of $58.33, then 47 monthly installments of principal and interest in the amount of $184.33, and thereafter a balloon payment for the remaining principal balance due and owing. The Sales Contract stated that the Promissory Note "shall be secured by a first lien upon the items listed on 'Exhibit A.'" The Promissory Note provided that it "is secured by a lien on all of the equipment of Wright's Photo Studio in Eldon, Missouri."

There was no evidence introduced at the hearing on Ferro's Motion to Surrender that any UCC–1 financing statements were ever filed in the county in which the business was located, or with the Missouri Secretary of State.

Ferro and Vergie G. Wright also entered into a Lease dated January 31, 1985, by which Ferro agreed to lease from Vergie G. Wright a parcel of land and building located at 318 South Maple, Eldon, Missouri, that housed the business of Wright's Studio for a term of 5 years beginning February 1, 1985. The rent for the first two years was $200.00 per month, and for the last three years was $300.00 per month. The Lease also required Ferro to make all required repairs to the premises, to insure the premises and to pay the real estate taxes on the premises during the lease term. At the expiration of the original five-year Lease term, Ferro continued to lease the premises from Vergie G. Wright on a month to month basis pursuant to an oral agreement for the sum of $300.00 per month.

Ferro has owned and operated Wright's Studio since he purchased it in January 1985. Throughout the years, Ferro has purchased numerous cameras and other photographic equipment that he used in the operation of the business, which replaced obsolete equipment originally purchased in 1985. Ferro testified that he has not used the equipment purchased from Vergie G. Wright during the last five years of business operations. Ferro also purchased a computer and software, which contains all of his business records.

Since February 1, 1985, Ferro has failed to make all of the payments due on the Promissory Note, and has failed to pay all the rent due pursuant to both the written Lease and the oral lease agreement. Ferro concedes that he "has made minimal payments on the promissory note," and "has also been very delinquent in the payment of rent," but testi-

---

1. There appears to be no dispute between the parties that Vergie G. Wright was entitled to retake possession of these items.

fied that Vergie G. Wright had always been willing to work with him.

Ferro also got behind in paying his personal bills. Sometime in late 1997 or in January of 1998, Ferro decided that he needed to find an additional source of income in order to be able to pay his mounting debts. Ferro planned to obtain a job as a merchant marine in the Gulf of Mexico beginning in March of 1998, and to keep the business of Wright's Studio operating through his two employees, Sherry Ferrell and Doug Grayson, who had each worked for him for about three years. In January of 1998, Ferro talked to Vergie G. Wright and to her son, John C. Wright, III, about his plans. John Wright holds Vergie Wright's durable power of attorney and has managed her affairs for the last couple of years.[2] Ferrell testified that she was present at the meeting and that John Wright stated that she could run the business for Ferro while he was gone. Ferro told Vergie Wright and John Wright that he wanted to keep Wright's Studio and planned to catch up in his arrears on rent and the Promissory Note. John Wright testified that after the meeting he understood that Ferro was going to find another source of income to pay Vergie G. Wright and that Ferrell and Grayson would keep Wright's Studio open for business. Ferro did go to work as a merchant marine in the Gulf of Mexico in March 1998, and continued working in the Gulf for several months. However, Ferro did not use the money he was making while working in the Gulf to pay the arrears due Vergie G. Wright. Instead, Ferro used the money to pay other bills.

While Ferro was in the Gulf, Ferrell and Grayson had control of the business of Wright's Studio. Ferro testified that he was the owner of the business and that he paid Ferrell and Grayson a salary to run the business. Ferro would talk to Ferrell about every two weeks to discuss the business with her.

It appears that Ferro paid the rent for the months of January and February 1998, before he left for the Gulf. Since February 1998, Ferro has made no rent payments personally. Ferrell testified that she was on a

friendly basis with John Wright, and that after Ferro left her in charge of the business, John Wright agreed that Ferrell could pay $400.00 to an exterminator, $400.00 to a contractor for repairs to the building and $400.00 for insurance for the premises in lieu of some of the rent payments. Ferrell testified that the $400.00 payment to the contractor was specifically in lieu of October 1998 rent. John Wright testified that this arrangement was a misunderstanding and that he still expected monthly rent to be paid in addition to Ferrell making the foregoing payments, which Ferro would have been required to make under the terms of the written Lease agreement. In any event, even if the payments in question were in fact in lieu of rent, there is no dispute that as of the end of September 1998 Ferro was still delinquent in the total amount of rent due and was delinquent in payments due under the Promissory Note.

On September 29, 1998, John C. Wright, III, on behalf of Vergie G. Wright, sent a letter to Ferro, which states in pertinent part:

> Please be advised that, pursuant to the terms of a certain Lease Agreement dated the 31st day of January, 1985; a certain Promissory Note and Security Agreement (with attached Exhibit A) dated the 1st day of February, 1985; and applicable provisions of the Missouri Uniform Commercial Code as contained in Chapter 400 of the Revised Statutes of Missouri,—**default** by you as the purchaser is declared in all aspects of the Lease with Option to Purchase as well as the business purchase agreement for the sale of the business entity known as Wright Studio in Eldon, Missouri, and the Security Agreement.

> You are further advised that all personal property and equipment located at Wright Studio, 318 South Maple Street, Eldon, Missouri in which you have any interest is considered as abandoned by you, repossessed; and/or reverted to my sole ownership based upon your total failure to make any payments whatever to me within the immediate preceding ten (10) years or

**2.** The Court will refer to Vergie G. Wright and    John C. Wright, III, together as "the Wrights."

longer. The current balance due and owing by you to me under the various agreements as well as conversion by you of property owned by me exceeds the sum of one hundred thousand ($100,000.00) dollars.

You are further advised pursuant to the applicable provisions of the Missouri Uniform Commercial Code as contained in Chapter 400 of the Revised Statutes of Missouri that the undersigned will sell, at public or private sale, at any time after ten (10) days from this letter being deposited in the U.S. Mails, all personal property pertaining to the business entity known as Wright Studio as well as the business entity known as Wright Studio.

You may cure the default and cancel this Notice of Sale by paying all sums due and owing within ten (10) days of this Notice. Failure to cure will result in you be [sic] forever foreclosed and barred from any right, title or claim to any personal property left at or any interest in the entity known as Wright Studio. (Emphasis in original.)

On either October 8, 1998, or October 12, 1998, or some date in between, John C. Wright changed the locks on the business premises of Wright's Studio and effectively prohibited Ferrell and Grayson from carrying on any further business of Wright's Studio. The evidence supports a finding that the locks were changed on October 8, 1998. Ferrell and Grayson both testified that the locks were changed on October 8, 1998, and John Wright testified that he placed a For Sale sign in the window of the business premises by the latest on October 11, 1998. However, as will be shown in subsequent discussion, the exact date that John Wright changed the locks does not affect the Court's ruling.

After changing the locks, John Wright took control over the business premises and all of the business assets of Wright's Studio. John Wright did allow Grayson to take his personal camera from the premises, and allowed Ferrell to retrieve some documents and negatives relevant to current customer accounts. John Wright changed the billing address for the telephone bill for Wright's Studio to his address and turned off Ferro's answering machine at Wright's Studio. John Wright also attempted to divert delivery of Wright's Studio's mail to himself, and succeeded in part. John Wright testified that he had custody of three checks sent to Wright's Studio. John Wright did not sue Ferro prior to engaging in the foregoing actions, and none of John Wright's actions in changing the locks and seizing the business premises and business assets were done pursuant to a court order.

When Ferro heard about the lock-out he returned to Eldon, Missouri as soon as he could, which was around the end of October or first part of November 1998. On November 12, 1998, Ferro filed an emergency petition for rehabilitation under Chapter 13 of the Bankruptcy Code along with the Motion to Surrender presently before the Court. A hearing was held on the Motion to Surrender on November 24, 1998, after which the Court allowed the parties additional time in which to file briefs. Ferro timely filed his brief on December 14, 1998. The Wrights' brief was filed slightly out of time, with the Court's permission, on December 16, 1998.

The Wrights attached to their brief a copy of three pages of the Debtor Index to Financing Statements for the office of the Miller County Recorder of Deeds, which shows that on February 6, 1985, Vergie G. Wright filed a financing statement with the Miller County Recorder of Deeds reflecting a secured interest in all equipment. The Wrights also attached to their brief a copy of a Uniform Commercial Code financing statement that reflects Ferro as the debtor, Vergie G. Wright as the secured party and a secured interest in "[a]ll of the equipment of Wright's Photo Studio of Eldon, Missouri." This financing statement is signed by Ferro and by Vergie G. Wright, but it is not file-stamped. On December 17, 1998, Ferro filed the Motion to Strike on the grounds that the Wrights failed to provide any evidence of the execution or filing of any UCC–1 financing statements at the hearing on the Motion to Surrender and, therefore, this new evidence attached to their post-hearing brief should be stricken. The Court grants the Motion to Strike for the reason championed by Ferro.

In any event, the exhibits only reflect that Vergie G. Wright filed a financing statement locally in Miller County. There is no evidence that Vergie G. Wright ever filed a financing statement with the Missouri Secretary of State, or whether the financing statements were renewed or allowed to expire. *See* Mo.Rev.Stat. §§ 400.9–401.(1)(c) and 400.9–403.(2).

The Court will now address the Motion to Surrender.

### Discussion

Ferro contends that because Vergie G. Wright failed to secure the Promissory Note with after-acquired property, and failed to take a security interest in the name of the business, the business' telephone number and the telephone listing, the Wrights improperly seized the business assets of Wright's Studio, with the exception of the items listed in Exhibit A attached to the Sales Contract. Ferro further alleges that the facts show that he did not abandon any of the business assets of Wright's Studio, that under Mo.Rev. Stat. § 441.065.(1) (Supp.1998) the Wrights could not have formed a reasonable belief that he had abandoned the same and that the Wrights failed to comply with Mo.Rev.Stat. § 441.065.(3) (Supp.1998) prior to seizing the business assets. Ferro also asserts that the Wrights failed to properly terminate the lease of the real property prior to the bankruptcy filing. For these reasons, Ferro argues that the lease of the business premises and all of the business assets of Wright's Studio seized by the Wrights, except for the items listed in Exhibit A attached to the Sales Contract, are property of the bankruptcy estate that the Wrights must surrender.

The Wrights contend that the Promissory Note does contain an after-acquired property clause that encompasses all the business equipment purchased by Ferro subsequent to his purchase of the assets of Wright's Studio, that pursuant to Mo.Rev.Stat. § 441.065.(1) (Supp.1998) they reasonably believed that Ferro had abandoned the business assets when he went to the Gulf, that the letter they wrote to Ferro substantially complied with the requirements of Mo.Rev.Stat. § 441.065.(3) (Supp.1998), and that they rightfully seized the business assets pursuant to a common law landlord's lien for unpaid rent. The Wrights also assert that they were entitled to engage in self-help remedies to take control of the real property upon Ferro's failure to pay the arrearage due under the written Lease, the oral lease and the Promissory Note. The Wrights argue that because they took action to recover the business assets of Wright's Studio and the real property prior to the bankruptcy filing, such property is no longer property of the estate and they need not be required to surrender any of it.

### 1. Pre-petition seizure of business assets

First, although a secured party may peaceably take possession of collateral when the debtor is in default under a security agreement, *see Wirth v. Heavey*, 508 S.W.2d 263, 266 (Mo.App.1974); Mo.Rev. Stat. §§ 400.9–503 (1994), it is clear that the Promissory Note was not secured by the name Wright's Studio, the telephone number or the telephone listing.

Second, the Court has carefully examined the language of the Promissory Note in the context of the requirements of Missouri law and finds that the Promissory Note does not contain an after-acquired property clause and that the Promissory Note was secured only by the supplies and equipment listed in Exhibit A attached to the Sales Contract. The Missouri Uniform Commercial Code expressly provides for the inclusion of after-acquired property clauses in security agreements. *See* Mo.Rev.Stat. § 400.9–204 (1994). "The intent to create a security interest in after-acquired property must be ascertained and judged by the language of the security agreement." *Central Prod. Credit Ass'n v. Hopkins*, 810 S.W.2d 108, 111 (Mo.App.1991). "There is nothing in the [Missouri Uniform Commercial] Code which expressly states what language is sufficient to create a security interest in after-acquired property." *Id.* "[I]n general it may be said that any words which reasonably indicate an intention to create such an interest are sufficient." *Id.* After-acquired property clauses are "enforceable [in Missouri] provided the intention of the parties to create such an interest is readily apparent from the lan-

guage of the document." *In re Carter,* 203 B.R. 697, 704 (Bankr.W.D.Mo.1996).

Here, the Promissory Note merely states that it "is secured by a lien on all of the equipment of Wright's Photo Studio." The Court determines that the language of the Promissory Note does not reasonably indicate any intent on the part of the parties to create a security interest in after-acquired property. The language expressly shows that the parties' intended the Promissory Note to be secured by the business equipment in use at the time of the sale, which was listed in Exhibit A attached to the Sales Contract. Upon Ferro's default in payments, in the absence of an after-acquired property clause the Wrights had no grounds to seize the business assets of Wright's Studio under the terms of the Promissory Note, with the exception of the supplies and equipment listed in Exhibit A attached to the Sales Contract.

Alternatively, the Wrights must meet the elements of Mo.Rev.Stat. § 441.065 (Supp.1998) in order to keep the seized business assets. Section 441.065 states that:

> Any property of a tenant remaining in or at the premises, after the tenant abandons the premises, may be removed or disposed of by the landlord without liability to the tenant for such removal or disposition. The premises shall be deemed abandoned if:
>
> (1) The landlord has a reasonable belief that the tenant has vacated the premises and intends not to return;
>
> (2) The rent is due and has been unpaid for thirty days; and
>
> (3) The landlord posts written notice on the premises and mails to the last known address of the tenant by both first class mail and certified mail, return receipt requested, a notice of the landlord's belief of abandonment. The notice shall include the following, where appropriate: "The rent on this property has been due and unpaid for thirty consecutive days and the landlord believes that you have moved out and abandoned the property. The landlord may declare this property abandoned and remove your possessions from this unit and dispose of them unless you write to the landlord stating that you have not abandoned this unit within ten days of the landlord having both posted this notice on your door and mailing this notice to you. You should mail your statement by regular first class mail and, if you so choose, by certified mail, return receipt requested, to this address .......... (here insert landlord's name and street address)"; and
>
> (4) The tenant fails to either pay rent or respond in writing to the landlord's notice within ten days after both the date of posting and deposit of such notice by either first class mail or certified mail, return receipt requested, stating the tenant's intention not to abandon the premises.

Mo.Rev.Stat. § 441.065 (Supp.1998).

Here, the Court determines that the Wrights did not have a reasonable belief that Ferro had vacated the business premises with the intent not to return. The evidence shows that Ferro had a conversation with the Wrights in January of 1998 in which he told them he planned to go to the Gulf of Mexico to work as a merchant marine in an attempt to make more money to pay off his indebtedness. Ferro also told the Wrights that while he was gone, his two employees, Ferrell and Grayson, would keep the business of Wright's Studio operating. John Wright testified that after the conversation with Ferro in January of 1998, he understood that Ferrell and Grayson would run the business for Ferro while he was gone. In fact, Ferrell and Grayson maintained full business operations until John Wright changed the locks on the premises and excluded them from the property. Based upon the evidence presented at the hearing, including the testimony regarding the numerous conversations between John Wright and Ferrell concerning the operation of the business, the Court finds that John Wright knew Ferrell and Grayson were operating the business on behalf of Ferro for the entire period of time that Ferro planned to be in the Gulf.

"Abandonment consists of two elements: (1) an intent to abandon, and (2) the external act by which the intention is carried into effect." *Hoffman Management Corp. v. S.L.C. of North America, Inc.,* 800 S.W.2d

755, 762 (Mo.App.1990). "Abandonment of property requires intent plus an act. A sufficient act is one that manifests a conscious purpose and intention of the owner of personal property neither to use nor to retake the property into his possession.... The intention to abandon may be inferred from strong and convincing evidence." *Wirth v. Heavey*, 508 S.W.2d at 267. In this case, there was clearly no abandonment by Ferro of the business of Wright's Studio, nor any of the business assets. The Court finds John Wright's testimony that he thought Ferro was completely out of the business after March of 1998 and had abandoned the business assets to be disingenuous.

Next, the Court determines that the letter sent by John Wright to Ferro on September 29, 1998, did not comply, even substantially, with the requirements of section 441.065.(3). Further, John Wright testified that when he sent the letter he did not know that Mo.Rev. Stat. § 441.065 even existed, nor that Missouri law required him to declare an abandonment of the personal property before seizing it. The September 29, 1998 letter clearly was written by John Wright to inform Ferro that he was exercising his rights to repossess collateral pursuant to the Missouri Uniform Commercial Code because of Ferro's default with no consideration of the requirements of section 441.065.(3).

The Court determines that the Wrights failed to meet the elements of Mo.Rev.Stat. § 441.065 (Supp.1998) prior to seizing the business assets.

Finally, the Wrights' assertion of a common law landlord's lien in the business assets for unpaid rent must fail. "Broadly defined, common-law distress allowed the landlord to go upon the demised premises and seize anything he might there find, irrespective of its ownership, and hold the same without sale or usage as a gage until the rental was paid." *Jones v. Ford*, 254 F. 645, 647 (8th Cir.1918). "The common-law distress for rent has never been countenanced in Missouri." *Id.* "Often when landlords are faced with tenants in possession who are delinquent in paying their rent, they want to assert their 'landlord's lien' against the tenant's property. In most cases, this lien is

chimerical. Missouri has no general common law landlord's lien." 18A Theodore H. Hellmuth, Missouri Practice, Real Estate Law-Disputes § 1191, p. 215 (1998). A landlord may not use self-help measures to take possession of a tenant's personal property as security for past due rent; the remedy is to sue the tenant for rent and possession under Chapter 535 of the Missouri Revised Statutes, or seek to attach the personal property for unpaid rent pursuant to Mo.Rev.Stat. § 441.240. *See Phillips v. Ockel*, 609 S.W.2d 228, 232 (Mo.App.1980). *See also Smiley v. Cardin*, 655 S.W.2d 114, 118 (Mo.App.1983) (landlord's self-help seizure of tenant's personal property for unpaid rent was a wrongful act that justified an award of $600 actual damages and $10,000 punitive damages in favor of the tenant in the tenant's conversion action against landlord).

In his post-hearing brief, Ferro concedes that the Wrights may keep the supplies and equipment listed in Exhibit A attached to the Sales Contract. However, the Wrights had no grounds to seize the remaining business assets of Wright's Studio. The property properly belonged in Ferro's possession prior to the bankruptcy filing, has become property of the bankruptcy estate since the bankruptcy filing, and, accordingly, the Court will order the Wrights to surrender to Ferro all of the business assets of Wright's Studio, including the name Wright's Studio, the telephone number and the telephone listing, with the exception of the supplies and equipment listed in Exhibit A attached to the Sales Contract.

2. *Pre-petition seizure of real property*

Ferro leased the business premises from Vergie G. Wright pursuant to a written lease for a period of five years. After the written Lease term expired, Ferro and Vergie G. Wright entered into a verbal agreement that Ferro would lease the business premises on a month to month basis. It was not necessary for the parties to put their agreement in writing in order to create a month to month tenancy, and Vergie G. Wright's consent to the month to month tenancy after the expiration of the written Lease created a new tenancy. *Schnucks*

*Carrollton Corp. v. Bridgeton Health and Fitness Inc.*, 884 S.W.2d 733, 739 (Mo.App. 1994). Whether Ferro was current or delinquent in the payment of rent, Vergie G. Wright was entitled to terminate the month to month tenancy by giving Ferro one month's notice. *See Davis v. J.C. Nichols Co.*, 714 S.W.2d 679, 682 (Mo.App.1986). *See also* Mo.Rev.Stat. § 441.060.3 (Supp.1998), which states:

> Except as otherwise provided by law, all contracts or agreements for the leasing, renting or occupation of stores, shops, houses, tenements or other buildings in cities, towns or villages, and of stores, shops, houses, tenements or other buildings except when such leasing, renting or occupation is as tenant of real estate used or rented for agricultural purposes, other than garden purposes, not made in writing, signed by the parties thereto, or their agents, shall be held and taken to be tenancies from month to month, and all such tenancies may be terminated by either party thereto, or the party's agent, giving to the other party, or the party's agent, one month's notice, in writing, of the party's intention to terminate such tenancy.

The letter purporting to terminate the lease was dated September 29, 1998, and the Wrights changed the locks and took possession of the premises on or about October 8, 1998, to October 12, 1998. It is clear in this case that the Wrights did not give the required one-month's notice prior to seizing possession of the business premises. Because the Wrights' failed to give the required notice before taking possession of the premises, the lease was not properly terminated prior to the bankruptcy filing and the premises rightfully belonged in Ferro's possession. After Ferro filed for bankruptcy protection, the lease became property of the bankruptcy estate. *Compare In re Huffman*, 171 B.R. 649 (Bankr.W.D.Mo.1994) (nonresidential lease of real property is not property of the bankruptcy estate and may not be assumed if lease is terminated pursuant to Missouri law before the bankruptcy petition is filed).

■ The Wrights assert that they were entitled to engage in self-help remedies to exclude Ferro and his employees from the premises on or about October 12, 1998, because of Ferro's delinquency in rent. First, the Wrights had not properly terminated the lease by failing to give the required one-month's notice and, accordingly, had no right to exclude Ferro or his employees from the premises. *See Wilson v. Kavanaugh*, 941 S.W.2d 605, 608 (Mo.App.1997). Second, self-help eviction remedies are effectively prohibited in Missouri. *See* 18 Theodore H. Hellmuth, Missouri Practice, Real Estate Law § 481, p. 727 (1985) (hereinafter "18 Hellmuth on Real Estate Law") ("Forceful dispossession of a tenant is a risky undertaking in Missouri. The landlord who tries it notwithstanding lease provisions purporting to authorize same [which in any event are absent here in the parties' oral lease agreement] may find himself subject to threat of all matter of legal actions, both civil and criminal."); Mo.Rev.Stat. § 441.233.1 (Supp. 1998) ("Except as provided in section 441.065, a landlord or its agent who removes or excludes a tenant or the tenant's personal property from the premises without judicial process and court order, or causes such removal or exclusion, or causes the removal of the doors or locks to such premises, shall be deemed guilty of forcible entry and detainer as described in chapter 534, RSMo."). The landlord's legal remedies are to sue the unwanted tenant for rent and possession under Chapter 535 of the Missouri Revised Statutes, file an unlawful detainer action under Chapter 534 of the Missouri Revised Statutes or bring an ejectment action. *See* 18 Hellmuth on Real Estate Law at § 481, pp. 727–28. The Wrights pursued none of the foregoing remedies in this case.

■ Further, even if common law forfeiture without court action is still a valid method by which a landlord may terminate a lease and retake possession of leased premises despite the enactment in 1997 of Mo.Rev.Stat. § 441.233.1 (Supp.1998), *see, e.g., Boyd v. Boone Management, Inc.*, 676 S.W.2d 24 (Mo.App.1984) (landlord exercised remedy of common law forfeiture of premises for non-payment of rent pursuant to terms of a written lease in lieu of bringing a rent and possession action against the tenant); *Inde-*

*pendence Flying Serv., Inc. v. Abitz,* 386 S.W.2d 399 (Mo.1965) (same), the elements of a common law forfeiture have not been shown here. First, there is no written lease term that permits Vergie G. Wright to take possession of the premises upon Ferro's default in rent payments. Although the written Lease executed by the parties in 1985 contained such a term, that Lease expired and was replaced by the oral month to month lease. Next, " '[t]o work a forfeiture of a leasehold estate at common law for non-payment of rent there must be a notice of forfeiture and a demand for the payment of the rent.' " *Independence Flying Serv.,* 386 S.W.2d at 404 (citation omitted). "Under the strict requirements of the common law 'the demand for rent must be made precisely on the very day when the rent becomes due, and for the precise amount due.' " *Id.* (citation omitted). Here, even if the September 29, 1998 letter could be construed as notice of forfeiture, the Wrights made no demand for the precise amount of rent due on the day that the rent became due.

The Court will order the Wrights to surrender the business premises located at 318 South Maple, Eldon, Missouri to Ferro.

### Conclusion

Based on the above discussion, the Court GRANTS the Motion to Require Surrender of Property of the Bankruptcy Estate by John C. Wright, III, Individually and as Attorney in Fact for Vergie G. Wright filed by the debtor, Ricardo Andres Ferro.

The Court ORDERS John C. Wright, III, acting individually and as attorney in fact for Vergie G. Wright, to surrender to Ricardo Andres Ferro the real property and business assets of Wright's Studio seized by John C. Wright, III, acting individually and as attorney in fact for Vergie G. Wright, on or about the dates of October 8, 1998, through October 12, 1998, including the name Wright's Studio, the telephone number and the telephone listing, with the exception of the supplies and equipment specifically identified in Exhibit A to the Sales Contract dated January 22, 1985, entered into between Vergie G. Wright as seller and Ricardo A. Ferro as buyer.

The Court ORDERS John C. Wright, III, acting individually and as attorney in fact for Vergie G. Wright, to surrender the property no later than eleven (11) days after the date this Memorandum Order is entered. In the event that John C. Wright, III, acting individually and as attorney in fact for Vergie G. Wright, chooses to appeal this order in lieu of surrendering the property, the Court ORDERS that John C. Wright, III, will post a bond in the amount of $10,000.00, which, in the event that John C. Wright, III, is unsuccessful on appeal, will be applied to the damages sustained by Ricardo Andres Ferro during the pendency of the appeal as a result of the continued possession of the property by John C. Wright, III. Such damages may be determined by this Court following a hearing, or, if appropriate, in a state court action.

The Court GRANTS the Objections to Respondent's Brief and Motion to Strike Exhibits filed by the debtor, Ricardo Andres Ferro.

The foregoing Memorandum Order constitutes Findings of Fact and Conclusions of Law as required by Fed.R.Bankr.P. 7052.

So ORDERED.