James BRYAN and Mabel Bryan,
Plaintiffs-Respondents,

v.

Donald VAUGHN and Doris M. Vaughn,
Defendants-Appellants.

James BRYAN and Mabel Bryan,
Plaintiffs-Appellants,

v.

Donald VAUGHN and Doris M. Vaughn,
Defendants-Respondents.

Nos. 10101, 10102.

Missouri Court of Appeals,
Southern District,
En Banc.

March 21, 1979.

Kenneth W. Johnson, Johnson & Sweeney, Springfield, for plaintiffs-respondents-appellants.

David L. Smith, Woolsey, Fisher, Clark, Whiteaker & Stenger, Springfield, for defendants-appellants-respondents.

PER CURIAM.

This case arises out of a lease entered into by James Bryan and Mabel Bryan, plaintiffs, and Donald Vaughn and Doris Vaughn, defendants. The Bryans were owners of the Lone Star Motel, located in Springfield, Missouri, and the Vaughns were the lessees of said motel. On September 7, 1973 plaintiffs filed suit by attachment, seeking to recover rent for the month of September, 1973. On September 10, 1973 defendants filed a motion to dissolve the attachment and the same was ordered dissolved the following day. Defendants counterclaimed in three counts, all of which are involved in this appeal. In Count I they claimed, inter alia, the sum of $800.00 for overpayment of rent for the months of July and August 1973; $1,000.00 for the wrongful attachment of their personal property by plaintiffs; and $5,000.00 deposited by them as security at the execution of the lease, together with interest thereon. In Count II of defendants' counterclaim punitive damages were sought for eviction of defendants from the leased premises. Count III prayed for an award of punitive damages for unlawful attachment.

The amended petition filed on plaintiffs' behalf contained five counts, only two of which are involved on appeal. Count I sought the recovery of $2,400.00 as rent for

the month of September 1973; Count II alleged that $7,200.00 was due plaintiffs as liquidated damages.

Trial was to the court, a jury having been waived, and findings of fact and conclusions of law were filed. Judgment was rendered in favor of plaintiffs and against defendants on Count I of plaintiffs' petition in the amount of $250.00. Judgment on all other counts of plaintiffs' petition was entered against plaintiffs and in favor of defendants. On Count I of the counterclaim the judgment was in favor of defendants and against plaintiffs in the amount of $5,000.00, with interest of 5% per annum from September 1, 1972. On Count II of the counterclaim judgment was in favor of plaintiffs and against defendants; and on Count III judgment was entered in favor of defendants and against plaintiffs for $275.00 actual damages, $1.00 nominal damages and $250.00 punitive damages. Cross appeals were filed with this court. We affirm.

The trial court found that a landlord-tenant relationship was created by the written lease agreement between the parties; that defendants took possession of the leased premises on or about September 3, 1972; and that under the lease defendants agreed to pay as rent, $2,000.00 per month, in advance, on the first day of each month. Further, it was found that as of August 31, 1973 defendants were current on their obligation for payment of rent.

It was not until September 1, 1973 that a dispute developed between the Bryans and the Vaughns. The basis of the dispute was Paragraph 4(a) of the lease, which read: "That the Lessors are in the process of building seven additional rooms and it is contemplated said rooms will be completed and ready for occupancy by June 1st, 1973. . . . [T]he Lessees shall provide adequate furnishings for said rooms and the rent under this lease shall be increased by $400.00 per month, to be effective 10 days after the date the units are completed and ready for occupancy. . . ." In addition to the $2,000.00 rent payment per month, and the increase in the above-quoted paragraph, the trial court found that the parties had entered into an oral agreement by which plaintiffs would provide furniture for the new rooms for which defendants would pay $100.00 per month rent. Thus, the maximum amount due from defendants on September 1 would have been $2,500.00.

It was undisputed that defendants paid $400.00 rent under Paragraph 4(a) for each of the months of July and August 1973. On the first day of September, 1973, defendants tendered a check for September rent in the amount of $1,700.00, which was refused by plaintiffs. Defendants' contention was then, as it is now, that $800.00 was properly deducted from the September rent because they had not owed the $400.00 they paid under Paragraph 4(a) in July and August, as all seven units had not then been completed and ready for occupancy. The seven units referred to in Paragraph 4(a) consisted of two groups of rooms: (1) five rooms which were completed by July 1, 1973 about which there is no controversy, and (2) two basement rooms which did not have private baths and which were used for storage. It was the two basement rooms which defendants allege were never completed in accordance with the lease.

On September 1 or 2, 1973, plaintiff Mr. Bryan told defendant Mrs. Vaughn not to rent any more rooms, but at least one room was rented thereafter. At some point on September 2, plaintiff Mr. Bryan pulled a backhoe across the driveway to the leased premises; a sign placed on the backhoe read: "Motel closed, lease not paid." The defendants rented a truck on September 4 in which they loaded their personal belongings. These personal effects were attached along with other personal property when this suit commenced on September 7, 1973.

The judgment of the trial court is attacked in several respects by the two parties. The first two points relied on by plaintiffs involve the attachment of defendants' personal property, and are combined in defendants' brief for the purpose of argument. Plaintiffs' third and fourth points are likewise argued together, and they relate to those portions of the trial court's

judgment concerning the legal effect of defendants' failure to tender $2,500.00 as rent on September 1. Defendants' points relied on attack the judgment on the ground that the trial court's decision on Counts I and II of the counterclaim rested on an erroneous finding that defendants had defaulted in the payment of rent. We shall discuss the points in the order just set out.

The plaintiffs refer us to the early case of *Chamberlain v. Heard*, 22 Mo.App. 416 (1886), which they believe to stand for the proposition that a landlord is entitled to his lien for rent if some statutory ground exists, "without regard to whether he believes that he is in jeopardy of not getting paid." *Chamberlain*, in fact, does not go so far; it states that the requirement of the statute of an affidavit stating the landlord's belief that he is in danger of losing his rent does not present an issuable fact so that such belief must be proved to sustain the attachment. But this is much different from a statement that attachment lies "without regard to" the plaintiff's belief that he will lose his rent unless the attachment issue. § 441.240, RSMo 1969, requires plaintiff to make an affidavit averring such belief, and we cannot believe the *Chamberlain* case was meant to encourage the swearing of false affidavits.

As recognized by *Heidemann v. Hellrung*, 220 S.W.2d 737, 738 (Mo.App. 1949), "[t]he purpose of the statute authorizing attachment when the tenant intends to remove his property from the premises is *to secure to the landlord the payment of his rent.*" (Emphasis ours). If the collection of rent is not endangered, and such fact is shown, the attachment should be dissolved. Whether actual or intended removal of property from leased premises will endanger the landlord in the collection of his rent is a question for the trier of fact. *Morris v. Hammerle*, 40 Mo. 489 (1867), *Kleun v. Vinyard*, 38 Mo. 447 (1866). In the case before us the trial court, sitting as the trier of fact, found that "the attachment of defendants' personal property was unlawful and not made in good faith, but was malicious in that, at the time the attachment was made,

plaintiffs had in their possession $5,000.00 belonging to defendants, plus one year's interest, which had been deposited as security for their performance of the lease agreement, and even under plaintiffs' interpretation defendants owed them only the sum of $2,500.00." There is substantial evidence to sustain this finding. No danger of loss of rent existed in fact, and the attachment was properly dissolved; this answers plaintiffs' first point. Further, as to the second point relied on by plaintiffs, the trial court's determination above rested on sufficient evidence and the imposition of damages for wrongful attachment under Count III of defendants' counterclaim was therefore proper.

We now turn to a discussion of plaintiffs' third and fourth points. Point III charges the trial court with error in its judgment on Counts I and II of the amended petition; the award of $250.00 to plaintiffs on Count I is challenged as "wholly insufficient", while the judgment against plaintiffs on their claim for liquidated damages in Count II is said to be unsupported by the evidence.

The court below found that "plaintiffs would be entitled to a judgment on Count I of plaintiffs' amended petition in the sum of $2,500.00 for rent due September 1, 1973, representing $2,000.00 under Paragraph 1(a), $400.00 under Paragraph 4(a), and $100.00 for furniture. However, defendants were precluded from keeping the leased premises by the action of plaintiffs [i. e. blocking the motel driveway with the backhoe bearing the sign "Motel closed, lease not paid"]. Plaintiffs should recover for that portion of the month that defendants were in actual possession, namely three days. . . . [T]he Court feels that a pro rata amount of one-tenth of the rental, namely $250.00, should be allowed plaintiffs under Count I of their petition."

Plaintiffs set out the following question in their brief: If the Vaughns (defendants) owed $2,500.00 as of September 1, "[h]ow can their liability be decreased because they abandoned the premises?" The answer to this question is that the tenants' liability for rent is suspended if

they abandon the premises because of their constructive eviction by the landlord. 49 Am.Jur.2d, Landlord and Tenant, § 576 (1970). *King v. Moorehead*, 495 S.W.2d 65 (Mo.App.1973). The court below found that plaintiffs' act of blocking the driveway with the backhoe and sign constituted an eviction of defendants, and we agree. "A constructive eviction may be found . . . when it appears that [the lessor] . . . does some act amounting to intentional, injurious interference . . . with the tenant's possession and which deprives the tenant of the means or the power of beneficial enjoyment of the demised premises, or any part thereof, or materially impairs such beneficial enjoyment." *Dolph v. Barry*, 165 Mo.App. 659, 668, 148 S.W. 196, 198 (1912). Because of the act of plaintiffs constituting an eviction, defendants were relieved of the obligation to pay rent after they abandoned the premises. The award of $250.00 to plaintiffs is not insufficient.

■ Also argued by plaintiffs under their third point is the contention that they were entitled to liquidated damages as set forth in the lease agreement. By way of response to this contention, we will set out the pertinent part of the lease: "Provided, however, that upon taking possession hereunder, the Lessors may at their election terminate and end this lease or may relet said property, and the Lessees shall be liable for the difference in the rental for the balance of the term, or if the Lessors do not relet but operate the property themselves, then and in that event the Lessors shall be liable for three additional months' rent from the time of retaking possession, to be paid as and for liquidated damages." (Emphasis ours). Even were we to find, without suggestion from either party, that the underlined word was included in the agreement by mistake, and on our own motion change the lease to read "Lessees" in place of the emphasized word "Lessors", still it would not aid the plaintiffs. Under the lease, plaintiffs as Lessors could, at their election, terminate the lease upon default by defendants in the payment of rent. At the time the backhoe was placed in the motel driveway, and when defendants were relieved of any further obligation under the lease upon their abandonment of the property the next day, plaintiffs had not elected to end the lease. In short, the lease was not terminated by defendants' failure to tender all the rent due on September 1, nor by election and notice thereof by plaintiffs. Instead, the lease ended by the wrongful act of plaintiffs, constituting an eviction, and in such circumstances plaintiffs are in no wise entitled to liquidated damages.

■ Finally, under Point IV of their brief, plaintiffs complain that the decree returning to defendants their $5,000.00 security deposit was erroneous because defendants had not performed their obligations under the lease. Under Paragraph 3(a) of the lease instrument, plaintiffs-lessors covenanted "To return the Five Thousand ($5,000.00) Dollars to Lessees upon their satisfying all their obligations under this lease." As we have explained above, upon payment of $250.00 to plaintiffs, pursuant to the affirmance by this court of the judgment below, defendants-lessees will have satisfied all of their obligations under the lease, and thus will be entitled to the return of their deposit.

■ We now consider defendants' allegations of error. Point I of defendants' brief relates again to Paragraph 4(a), discussed above, and states that the finding that defendants owed $2,500.00 on September 1, and the judgment resulting therefrom, should not be permitted to stand. Defendants urge us to adopt the view that Paragraph 4(a) is unambiguous, and that by its clear terms we should determine the existence of an overpayment in July and August, all seven rooms not then having been completed. We are unable to adopt the view urged. "It is sometimes said that if the words of a contract are plain and clear, evidence of surrounding circumstances to aid interpretation is not admissible. But some of the surrounding circumstances always must be known before the meaning of the words can be plain and clear; and proof of the circumstances may make a meaning plain and clear when in the absence of such

proof some other meaning may also have seemed plain and clear." 3 Corbin on Contracts § 542, pp. 100–103 (1960). We believe, with the trial judge, that such terms as "seven additional rooms", "completed", and "ready for occupancy" were demonstrated to be ambiguous in the course of trial, and consequently, interpretation was required.

 Alternatively, defendants say that if an ambiguity exists it should be construed against the one who drafted the instrument. This is no doubt an accurate statement of a rule of construction where the ambiguity remains despite all efforts to eliminate it. But the rule is to be applied only when other means of construction fail, and that is not this case. *Guild Management Co. v. Oxenhandler*, 541 S.W.2d 687 (Mo.App.1976). The trial judge was able to determine that the parties never contemplated the two basement rooms would be used for lodging overnight guests, and that finding is amply supported by the evidence. "In ascertaining the intent of the parties it is permissible to consider their situation and the accompanying circumstances at the time the lease was executed." *Ferguson v. Gulf Oil Corp.*, 382 S.W.2d 34, 37 (Mo.App. 1964). Because the two basement rooms were not intended by either of the parties to be completed or furnished as were the other five rooms mentioned in Paragraph 4(a), it follows that all seven rooms were completed as of July 1 and the additional $400.00 rent was owed for the month of July and each month thereafter. Defendants did default in the payment of rent by tendering a check for $1,700.00 on September 1, and the result reached by the trial court was and is correct.

 Other questions are raised by defendants concerning the judgment on Count I of the counterclaim. denying enumerated items of damage claimed by defendants.

These items of damage were not mentioned in either of defendants' points relied on, but were discussed only in the argument portion of their brief. We have held that matters not stated under "Points Relied On" will not be considered by this court. *Nutz v. Shepherd*, 490 S.W.2d 366 (Mo.App. 1973).

 The final point for our consideration is defendants' second point relied on. It suggests that the basis for the trial court's refusal to award punitive damages for eviction under Count II of the counterclaim was an erroneous finding that defendants had failed to pay the total rent due on September 1, 1973. Defendants state: "If the trial court was in error in holding that defendants owed more rent than was tendered, then the court erred in failing to render a judgment on Count II of defendants' Counterclaim in favor of defendants and against plaintiffs." We have explained hereinabove that the trial court was in fact not in error in holding that more rent was owed than was tendered by defendants. The eviction by plaintiffs, while wrongful, was provoked by defendants' failure to tender all the rent due, and so was not such as would justify the imposition of punitive damages.

We find no error, and the judgment of the trial court is therefore affirmed in all respects.

All concur, except GREENE, J., not participating because not a member of the court when case was submitted.