John LADEAS, Respondent,

v.

J.B. and Virginia K. CARTER,
Appellants.

No. WD 45540.

Missouri Court of Appeals,
Western District.

Dec. 15, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Dec. 22, 1992.

George Alex Bartlett, Jefferson City, for appellants.

John Charles Reed, Jefferson City, for respondent.

Before KENNEDY, P.J., and BRECKENRIDGE and HANNA, JJ.

HANNA, Judge.

Defendants/Appellants are husband and wife and the owners of an apartment building in Jefferson City, Missouri. Plaintiff/Respondent Ladeas is a native of Greece, having moved to this country in 1985. Plaintiff went to the apartment building and negotiated a lease with the apartment manager, Mary Purnell, agreeing to rent the apartment for $175.00 a month for six months and thereafter for $185.00 per month. A lease was signed and $270.00 was paid, which represented the security deposit and one half of the first month's rent. Shortly thereafter, Karen Coker replaced Mary Purnell as the manager. The defendants were unable to locate the lease and their records did not show a deposit to their account of the $270.00. However, rent was paid for the months of July through September. The $175.00 rent payment caught Mrs. Carter's attention because her records indicated that the apartment was vacant and the normal rental was $185.00 a month. An eviction letter was followed by a confrontation of the parties on October 1, 1987, when Mrs. Carter went to the apartment of Mr. Ladeas. At this point, many facts become disputed but they are related here compatible with the jury verdicts. Mr. Ladeas did not answer the door, but as described by

Mrs. Carter, there was noise coming from inside the apartment, which sounded like items being thrown against the wall. The police were called and upon arrival, they testified, Mrs. Carter told them that the person in the apartment had a key to the apartment but did not have a lease and had not paid a deposit or any rent. Mrs. Carter agreed to sign a complaint for trespassing. Mr. Ladeas did not produce any deposit or rent receipts or the lease agreement when requested by the officers. Mr. Ladeas was arrested and taken to the police station. At the station, he found a receipt in his wallet for the deposit and the rent. He was released without having to post bond. When he returned to the apartment, he found Mrs. Carter, some other ladies and two men with a truck removing items from the apartment. The police were again called and they convinced Mrs. Carter to let the court settle the matter. Mr. Ladeas found missing five or six pieces of underwear, two shirts, some linen, a boat lock and a video tape recorded in Greece by his father for a total dollar figure of $85.00. Due to different technologies, Mr. Ladeas had been unable to play the tape which was described as including his father's last words to him. His father died a few weeks later.

Mr. Ladeas brought an action against the Carters for malicious prosecution, conversion, trespass, and wrongful eviction. The jury returned an award for actual damages in the amount of $33,180.00 and for punitive damages of $29,000.00. Judgment in that amount was entered and this appeal followed.

In their first point and its subparts, the defendants contend the trial court erred in submitting the malicious prosecution claim to the jury because there was no evidence that a prosecution was "commenced" against plaintiff Ladeas or that the defendants "instigated" the prosecution or that they acted without probable cause.

■ A plaintiff is obligated to plead and prove six elements to recover on a malicious prosecution cause of action. They are as follows: the commencement of a prosecution against plaintiff; instigation by the defendant; the termination of the proceeding in favor of the plaintiff; the want of probable cause for the prosecution; the defendant's conduct was actuated by malice; and the plaintiff was damaged. *Burnett v. Griffith,* 769 S.W.2d 780, 784 n. 2 (Mo. banc 1989). *See also Sanders v. Daniel Int'l Corp.,* 682 S.W.2d 803, 807 (Mo. banc 1984).

We note at the outset defendants' strong argument found in *Sanders* that "sound public policy dictates that the law should encourage the uncovering and prosecution of crime." *Id.* at 806. The merit of this policy is beyond argument but the argument has little, if any application under these facts. As the facts of this case will be developed, it is clear Mrs. Carter did not call the police to report criminal activity. It was her testimony that she never wanted the plaintiff to go to jail; rather she just wanted him to leave and wanted the police to help her to get him out of the apartment.

■ We review the evidence in the light most favorable to the plaintiff and give the plaintiff the benefit of all reasonable inferences to be drawn from the evidence. *Huttegger v. Davis,* 599 S.W.2d 506, 508 (Mo. banc 1980). The verdict should not be overturned unless there is a complete absence of probative facts to support the verdict. *Bradley v. Browning–Ferris Indus., Inc.,* 779 S.W.2d 760, 762 (Mo.App. 1989).

■ The defendants' argument refers to Missouri Supreme Court Rule 37.34 which mandates that all violations shall be "prosecuted" by information and allows the prosecutor to file an information based upon either his own knowledge or information and belief or upon a verified complaint. Rule 37.33 requires the written complaint, among other things, to be verified by oath or affirmation of the complainant. Defendant Carters argue that since the trial complaint and summons were not verified by the oath or the affirmation of anyone, let alone Mrs. Carter, or signed by the prosecutor, it was ineffective as an information. The complaint bears the handwritten notation "Dismissed rent problem Jim Riner." Relying on Supreme Court Rule 37.33, the

defendants argue that the complaint was insufficient because it was not verified by oath or affirmation and therefore it was insufficient to constitute an information. Hence, the defendants argue the prosecution was never commenced against plaintiff.

The facts viewed most favorably to the verdict are as follows. Mrs. Carter told the officers she would sign the complaint for trespassing and take whatever means necessary to get plaintiff out of the apartment. She signed the complaint in front of the police officer and plaintiff Ladeas was arrested for trespassing. He was taken out of his apartment and to the police station where he was finger-printed and placed in a cell. He was then removed from the cell for mug shots taken from three different positions. He was required to fill out some papers, his Miranda rights were read to him and he was returned to his cell for approximately one hour. Bail was originally set at $200.00 but none was required when Mr. Ladeas produced his rent receipt. Before leaving, Mr. Ladeas was given a summons by the officer. The officer testified that a copy of the summons stays in the police file and another copy goes to the municipal court. In response to the summons, Mr. Ladeas appeared in court on October 14, 1987, with his attorney. His name was called and he appeared in front of a judge. Thereafter, the prosecutor informed him that the charges had been dismissed. These are the facts that are determinative of whether the evidence was insufficient to prove an action was "commenced" against the plaintiff.

This argument was made in the case of *Stubbs v. Mulholland,* 67 S.W. 650 (Mo. 1902). Defendant contended that since the warrant, which was the basis of the plaintiff's arrest, was improper, there could be no prosecution of the plaintiff and the plaintiff's malicious prosecution claim must fail. The Supreme Court rejected this argument.

But even if the magistrate had no jurisdiction whatsoever, his judgment is just as good for the purpose of an action for malicious prosecution as if plenary jurisdiction existed. On this point Prof.

Greenleaf observes: "Nor is it material that the plaintiff was prosecuted by an insufficient process, or before a court not having jurisdiction of the matter; for a bad indictment may serve all the purposes of malice as well as a good one, and the injury to the party is not on that account less than if the process had been regular, and before a competent tribunal."

*Stubbs,* 67 S.W. at 663.

In *Best v. Hoeffner,* 39 Mo.App. 682 (1890), the court considered a malicious prosecution case where the defendant argued that the plaintiff's cause of action should be non-suited because the information in the criminal court was void because it was sworn to by a private citizen. The court rejected that argument holding that the void information did not defeat the plaintiff's malicious prosecution action. *Id.* at 684. The issuance of an unverified summons, while not legally sufficient to sustain a successful prosecution, does not lessen the effect upon the plaintiff to appear at the court hearing.

In *Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10, Etc.,* 605 F.2d 1228, 1249–1250 (2nd Cir.1979), *cert. denied,* 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980), this issue was considered under New York law. The plaintiff received an "appearance ticket" at the police station that was not a process issued from a judicial officer. The court identified the difference between the commencement of a proceeding when dealing with the law of criminal procedure from that of tort law. The court held that the "appearance ticket" was sufficient to constitute the commencement of a prosecution for the purposes of a malicious prosecution action. *Id.* at 1250. Failure to commence the criminal action with a judicially issued summons was not sufficient to shield defendants from the consequences in a malicious prosecution action.

Also, Restatement (Second) of Torts § 654 (1977), entitled "Institution of Criminal Proceedings" provides, in relevant part, as follows:

(2) Criminal proceedings are instituted when

(a) Process is used for the purpose of bringing the person accused of a criminal offense before an official or tribunal whose function is to determine whether he is guilty of the offense charged, or whether he shall be held for later determination of his guilt or innocence; or ...

Comment b. to § 654 persuasively states the basis for our decision.

b. It is not material that the official or tribunal before whom the proceeding is brought has no jurisdiction over it, so that it is in fact not a legal proceeding. Nor is it important the process, indictment or information with which the proceeding is instituted lacks essential particulars or for that reason is ineffective, or even that it does not succeed in charging any offense known to the criminal law. So long as the proceeding is instituted for the purpose of charging a crime and inflicting a penalty, the accused is not to be turned away with the consoling assurance that he never really was prosecuted at all; and a prosecution is still a prosecution although it is successfully defended upon the law rather than the facts.

We conclude that for the purposes of a malicious prosecution action, the actions of the defendants were sufficient to satisfy the requirement that there had been a commencement of a prosecution against the plaintiff.

The defendants next argue that the evidence is not sufficient to satisfy a submissible case on elements two and four of a malicious prosecution action. To maintain a malicious prosecution action, the plaintiff must also prove that the defendants instigated the prosecution and that the defendants acted without probable cause. *Burnett*, 769 S.W.2d at 784. They contend that the decision to arrest plaintiff Ladeas and the selection of the charge of trespass was made by the police officer after which a complaint was signed. Further, they contend they are not responsible for the police officer's decision to arrest. For their legal

position, they cite Restatement (Second) of Torts § 653 cmt d. (1977), arguing the evidence does not sustain the fact that the defendants procured the police officers to initiate the proceedings, therefore making defendants liable for instigation. As a result, they claim the second element is unproven.

In making this argument, the Carters state the facts in the light most favorable to them. As indicated earlier, the standard applied when determining the sufficiency of the evidence compels this court to review it in the light most favorable to the plaintiff, giving to him the benefit of all reasonable inferences to be drawn on the evidence. *Huttegger*, 599 S.W.2d at 508. Viewing the evidence in that respect, the facts are that Mrs. Carter called the police to the apartment complex, at which time she told them that a man was in the apartment who had not signed a lease, paid a deposit or paid any rent. She did not tell the police she had accepted rent from the man for the months of July, August and September or that her manager, Karen Coker, had told her Mr. Ladeas had shown her the lease and the receipts for the deposit payment. Before the officers went to the apartment, Mrs. Carter told them she would sign a complaint for trespassing and that she would take whatever means necessary to get the person out of the apartment. After the arrest, but before Mr. Ladeas went to the police station, the officers presented the complaint to Mrs. Carter, who signed it.

■ The giving of honest assistance and information does not necessarily render a person liable as an instigator, but a person may be liable for giving false information to the authorities. *Palermo v. Cottom*, 525 S.W.2d 758, 763 (Mo.App.1975). There must be some affirmative action by way of advice, encouragement, pressure or something similar in the institution, or causing the institution of the prosecution. *Id. See also La Font v. Richardson*, 119 S.W.2d 25, 29 (Mo.App.1938) (where the court held that the defendants failed to act in good faith in communicating information to the

prosecuting authorities by failing to communicate all ascertainable facts).

■ Restatement (Second) of Torts § 653 (1977), sets forth the liability of a private person who initiates or procures the institution of a criminal proceeding against another when it is done without probable cause and primarily for a purpose other than that of bringing an offender to justice. Comment d., cited by the defendants, concerns the person who procures the institution of criminal proceedings by inducing a third person to initiate them. Simply giving information to the third person does not constitute "procurement of the proceedings ... if it is left to the uncontrolled choice of the third person to bring the proceedings or not as he may see fit." *Id.* The issue becomes whether the third person, the charging and arresting police officer, was left to his "uncontrolled choice" to charge and make the arrest. Comment g. of § 653 deals with giving false information to a public official. It provides that if the information is known to be false and intelligent exercise of the officer's discretion is impossible, then a prosecution based upon it is procured by the person giving the false information. Certainly, in the case here, no arrest would have been made but for Mrs. Carter's recitation of inaccurate and incomplete facts and the misstatement and omission of facts are sufficient to find that she instigated the prosecution against plaintiff Ladeas.

■ The second part of defendants' argument claims that Mrs. Carter had probable cause. Probable cause was defined in *Alexander v. Laclede Gas Co.*, 725 S.W.2d 129, 130 (Mo.App.1987):

> The probable cause to initiate criminal proceedings sufficient to rebut a claim of malicious prosecution is "reasonable grounds for suspicion, supported by circumstances in evidence sufficiently strong to warrant a cautious man in his belief that the person accused is guilty of the offense charged."

We consider those facts as the prosecuting party could have reasonably believed them to be under the circumstances. Mrs. Carter knew that plaintiff Ladeas claimed to have a lease and also to have a receipt for his deposit. She knew her manager had accepted rent from plaintiff Ladeas for the months of July, August and September. Mrs. Carter's manager testified she told Mrs. Carter that she had seen the receipt for the deposit. These facts make a submissible case of a lack of probable cause. Under these circumstances, a "cautious" person would not have called the police and accused another of trespassing.

The Carters next argue that the wrongful eviction judgment should be set aside because they did not evict plaintiff from the apartment on October 1, and alternatively, the eviction was not wrongful because the rent was due on the first day of the month and had not been tendered or paid. On the issue of who evicted plaintiff, the Carters point to the testimony of one of the arresting officers, Officer Dunwiddie. They claim his testimony proved that he made the decision to arrest Mr. Ladeas and since the "eviction" was the arrest of Mr. Ladeas, it was not done by Mrs. Carter, but by the police, based upon their observations and investigations.

There is a strong factual basis for the jury to believe that Mrs. Carter's sole purpose in calling the police was to use them to assist her in getting Mr. Ladeas out of the apartment and that she had no desire to see him face any criminal responsibility. She made statements to the police that were designed to have him arrested. No arrest would have taken place but for Mrs. Carter's statements to the police that Mr. Ladeas had no right to be in that apartment. She caused and was responsible for the arrest and removal of Mr. Ladeas from the premises. Her actions immediately following his arrest and removal from the premises confirms her purpose to evict him. Immediately after the arrest, Mrs. Carter asked the police officers what she should do with Mr. Ladeas' personal property. Thereafter she made plans for storage of his property, contacted men with a truck to help with the move, got her manager and two other helpers to help inventory his property, unlocked the door and entered the apartment. She immediately invento-

ried the property and was moving it out when Mr. Ladeas returned from the police station. All of these acts were consistent with the eviction of Mr. Ladeas from the apartment.

Where a landlord, or a person for whose acts the landlord is responsible, wrongfully evicts a tenant, a tenant may maintain an action in tort against the landlord. *Davidson v. Hess,* 673 S.W.2d 111, 113 (Mo.App.1984). The jury was free to believe that Mrs. Carter was directly responsible for the eviction of the tenant and that her actions evidenced her intention that the arrest was to be an eviction.

Finally, whether the rent was paid or not on October 1, 1987, does not justify Mrs. Carter's actions. There was no evidence showing that the rent was due on or before the time of the eviction, October 1. Mrs. Carter testified whether Mr. Ladeas paid the rent that day meant nothing to her and her argument now is only an afterthought, attempting to find a legal excuse for her actions.

The jury awarded $5,000.00 in actual damages and $15,000.00 in punitive damages on the wrongful eviction claim. The defendants claim the evidence does not support those awards *citing Boyd v. Boone Management, Inc.,* 676 S.W.2d 24, 27 (Mo. App.1984). In *Boyd* the court set aside the judgment for actual damages because there was no connection between the lessor's wrongful act and the resulting injury of mental anguish and other claims. *Id.* at 27. The court did allow the lessee moving expenses and return of her security deposit as actual damages. *Id.* The mental anguish that the lessee claimed in *Boyd* occurred when she dropped out of school at the University of Missouri at Columbia because of the eviction and returned to her original residence in St. Louis. She claimed she suffered mental anguish when she attempted to enroll in a community college in St. Louis but was rejected. She related this mental anguish caused by this rejection to the eviction from her apartment. The court ruled the claimed damage too remote. *Id.* The humiliation and anguish that Mr. Ladeas claims resulted from his removal from his apartment, his arrest and the events that followed. He was handcuffed and frisked/searched in front of his friends and neighbors and then taken to police headquarters. At the headquarters, mug shots were taken; he was fingerprinted on two occasions; and he remained in jail for a period of time. Subsequently, he was charged with trespassing, and returned home to find Mrs. Carter removing his personal items from the apartment. This mental anguish is not remote in time and is not subject to the criticism of Boyd's claim. The evidence supports an award for the humiliation and mental anguish.

As a general rule, punitive damages are not awarded for breach of contract and defendants cite *Boyd* for the proposition that punitive damages may not be sustained in this action. *See also Foster v. Keena,* 714 S.W.2d 180, 182 (Mo.App. 1986). An exception to the rule denying punitive damages occurs when a plaintiff alleges and proves a breach that amounts to an independent and wilful tort. *Foster,* 714 S.W.2d at 182. A wrongful eviction involves a breach of contract by the landlord. Where the eviction has resulted in mental or physical injury to the tenant, the latter may waive the breach of contract and sue in tort. 49 Am.Jur.2d *Landlord and Tenant* § 327 (1970).

*Boyd* finds its support in *Bryan v. Vaughn,* 579 S.W.2d 177, 182 (Mo.App. 1979). *Bryan* set aside the punitive damage award because "[t]he eviction by plaintiffs, while wrongful, was provoked by defendant's failure to tender all the rent due, and so was not such as would justify the imposition of punitive damages." *Id.* The lessees of a motel refused to pay an increase in rent that was due upon the addition of seven rooms to the motel. *Id.* at 179. The lessee's check for the reduced amount was refused by lessors. *Id.* The lessors forcibly evicted the tenant from the motel by pulling a backhoe across the driveway to the leased premises with a sign which read: "MOTEL CLOSED, LEASE NOT PAID." *Id.* The lessees moved out and the court concluded that the eviction was wrongful but provoked by the lessee'

failure to tender all of the rent due and would not justify the imposition of punitive damages. *Id.* at 182.

The giving of an instruction for punitive damages and the award for such was approved in *Strauel v. Lubeley,* 186 Mo.App. 638, 172 S.W. 434 (1915). The defendant, acting as an agent of the owner, forcibly entered his room and carried out all of plaintiff's furniture, wearing apparel and other merchandise and left it on a lot outside the building. *Id.* 172 S.W. at 435. In this case, the jury had the evidence to allow a finding that there was no lawful dispute between the parties over the rent or that Mr. Ladeas' actions provoked Mrs. Carter to cause his eviction.

 The defendants claim that the verdict directing instruction for wrongful eviction was an incorrect statement of the law in that it failed to submit the issue of the wrongfulness of the defendants. The defendants acknowledge that the error was neither preserved at the instruction conference nor in their motion for new trial and request plain error review pursuant to Rule 78.08. Such a failure to object either at the instruction conference or in the post-judgment motion fails to preserve the claimed erroneous instruction for review on appeal. *Black v. Cowan Constr. Co.,* 738 S.W.2d 617, 621 (Mo.App.1987). Considering the evidence we have reviewed in this opinion and whether there exists manifest injustice and miscarriage of justice resulting from the claimed instructional error, we decline the defendant's invitation to review the matter under plain error.

The defendant's third point claims the court erred in not setting aside the actual and punitive damages of the plaintiff's conversion claim. First, they claim there was not sufficient evidence to support the actual damages of $2,680.00 because the standard must be the fair market value of the property and not "sentimental" value. The missing items amounted to a value no greater than $85.00 by plaintiff's evidence. Additionally, there was a video tape recorded in Greece from the plaintiff's father which the plaintiff had not had a chance to watch. It was intended to be the father's

last words to his son and he died approximately five weeks later. No dollar value was placed on the video.

The defendants cite *Southern Missouri Bank v. Fogle,* 738 S.W.2d 153, 158 (Mo. App.1987) stating that it requires that the plaintiffs should only be entitled to receive the fair market value of those items. The plaintiff responds that *Breece v. Jett,* 556 S.W.2d 696, 709–710 (Mo.App.1977) discusses property having special or sentimental value quoting from *Shewalter v. Wood,* 183 S.W. 1127, 1128 (Mo.App.1916). The court stated, "[a]s a general principle, a recovery for sentimental value of personal property cannot be had in a suit for conversion, but as to such things as family pictures, heirlooms and the like, which cannot be replaced and have value to the owner, the rule requires the allowance of damages in compensation of the reasonable special value of such articles to their owner." *Breece,* 556 S.W.2d at 709–710. The measure of recovery is not the proper subject of personal opinion of the owner but rather "the jury was obligated to ascertain the amount of damages in the light of all the facts and circumstances." *Kalinowski v. M.A. Newhouse & Son,* 53 S.W.2d 1094, 1097 (Mo.App.1932).

 The measure of damages in an action for conversion of ordinary personal property is the reasonable market value of the personal property at the time of the conversion. *Breece,* 556 S.W.2d at 709. In the case where the personal property is something of sentimental value, such as family pictures, heirlooms and the like and which cannot be replaced and have a value to the owner, a different rule requires "the allowance of damages and compensation of the reasonable special value of such articles to their owner." *Id.* at 709–10. The damages are not such that the witness may speak to, but lead to the jury's determination based upon the facts and circumstances in evidence. *Kalinowski,* 53 S.W.2d at 1097. Therefore, the fair market value of certain of the goods may very well have amounted to a determinable figure but the video tape of plaintiff's father's last words which, because of technical ·

problems, had never been viewed, carries a value different than its fair market value.

The Carters next point is stated as follows: "Alternatively, the trial court erred in not remitting the actual damages with respect to the conversion claim to $1,000.00." Wherein and why the verdict was not remitted to $1,000.00 is not addressed in the point relied on as mandated by Rule 84.04(d). Merely suggesting a remittitur to $1,000.00 presents nothing for appellate review. *Brotherton v. Burlington Northern R.R.*, 672 S.W.2d 133, 139 (Mo.App.1984).

Next, the defendants contend that the evidence is insufficient to support a punitive damage award for either the conversion or trespass claims. We will not repeat the evidence already discussed at length, which provided the jury with sufficient evidence that Mrs. Carter acted wrongfully and intentionally and that she did so without just cause or excuse. In *Routh v. Burlington Northern R.R. Company*, 708 S.W.2d 211 (Mo.App.1986), the court ruled that punitive damages are proper when the party knows that the act is wrongful and it is done intentionally without just cause or excuse. *Id.* at 217. The evidence sustained the plaintiff's burden that Mrs. Carter made a determination to evict Mr. Ladeas from the apartment with the use and assistance of the Jefferson City Police Department and to do this she misled the two police officers. Having done this, she then, in reckless indifference to the plaintiff, went upon his property to remove his personal possessions.

The defendants claim Mrs. Carter had the right to go onto the property pursuant to the lease agreement which allowed an examination of the apartment's condition and to make repairs and show the apartment to prospective tenants. The plaintiff's evidence was clear that Mrs. Carter did not enter onto plaintiff Ladeas' apartment pursuant to that provision. She entered the apartment for the purpose of inventorying Mr. Ladeas' property and then removing it.

For their final point, the Carters state that "[e]ven if ... the various awards can be separately upheld, the trial court erred in denying [defendant's] motion for new trial and remittitur because under the circumstances of this case, the amounts awarded by the jury when considered in the aggregate are excessive." This issue has not been properly preserved because the point fails to state wherein and why the award was excessive. *See Tennis v. General Motors Corp.*, 625 S.W.2d 218, 228–229 (Mo.App.1981) (where the court reviewed a similar lapse in a point relied on). The *Tennis* court also pointed out that the failure to state the wherein and why the verdict was allegedly excessive preserved nothing for appellate review. *Id.* at 229.

Judgment affirmed.

All concur.