**Margaret B. WILSON, d/b/a Wilson & Associates, et al., Plaintiffs/Appellants,**

v.

**Thomas KAVANAUGH, Defendant/Respondent.**

No. 69894.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 4, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 20, 1997.

Application to Transfer Denied
April 29, 1997.

Melvin L. Raymond, St. Louis, for plaintiffs/appellants.

Charles A. Hapke, Weldon Springs, for defendant/respondent.

GRIMM, Judge.

In this case, the trial court consolidated two matters for trial. One is defendant/tenant's wrongful eviction case, wherein he alleged he was wrongfully evicted on May 5, 1995.

The other is plaintiffs/landlords' unlawful detainer action. In this action, landlords alleged tenant unlawfully detained property after July 1, 1995.

The trial court found that tenant had unlawfully detained the property and awarded landlords damages and possession. However, the trial court also found that landlords had earlier unlawfully evicted tenant. It awarded him actual and punitive damages.

Landlords appeal, raising three issues. They contend the trial court erred in finding that (1) they evicted tenant, (2) tenant was entitled to damages for legal work, and (3)

tenant was entitled to punitive damages. We modify and affirm.

## I. Background

For seventeen years, tenant rented office space on a month-to-month basis from landlords, at least one of whom is an attorney. During these years, tenant, who is also an attorney, had a key to the building and access to his office twenty-four hours a day, seven days a week.

Tenant fell behind in his rent and owed rent for February, March, and April, 1995. On April 22, landlords delivered a notice directing tenant to vacate "on or before April 28, 1995." On May 5, landlords changed the locks to the building. They did not give tenant a key to the new lock.

Tenant asked for a key, but landlords ignored his request. Thus, tenant's access to his office was limited to 9:00 a.m. to 5:00 p.m., Monday through Friday.

On May 11, landlords gave tenant a new notice. This notice directed him to vacate "on or before May 22." The next day, tenant hired a locksmith to make him a key to the building as landlords refused to provide one. Unknown to tenant, the locksmith did not make a new key. Rather, he changed the whole lock, thereby denying access to landlords. On May 13, landlords had a locksmith again change the lock.

On May 15, landlords wrote tenant a letter. In that letter, they advised him he was four months in arrears on his rent. Further, among other things, they advised him that until May 22, his office access was limited to "normal business hours 9 A.M. to 5 P.M., Monday through Friday." Also, the notice advised that on May 22, his "tenancy is terminated."

On May 23, landlords filed a rent and possession action. On May 30, landlords gave tenant a 30-day notice to vacate "on or before June 30." This notice apparently complied with the statutory requirement of one month's written notice. *See* § 441.060.*

On June 30, the trial court, Judge Steven Ohmer presiding, awarded landlords posses-

sion and $2,250 rent. Also, the trial court found in favor of landlords and against tenant on tenant's counterclaim for wrongful eviction.

On July 7, tenant filed an application for trial de novo. Thereafter, landlords requested execution. The record is confusing as to when this occurred. The request is file stamped July 13 by the circuit clerk's office. The jurat on the request reflects that the matter was subscribed and sworn to by one of the landlords on July 14. The clerk's memorandum states that the execution was delivered to the sheriff on August 4.

Regardless of when execution was requested, on July 25, tenant paid the judgment and also paid the July rent. Also, he specifically reserved his right to a trial de novo on his wrongful eviction claim. Tenant sent a copy of the court's memorandum concerning these actions to landlords' attorney on July 25. Thereafter, on August 1, tenant paid that month's rent.

On August 2, landlords delivered a notice to tenant. Among other things, it stated that "execution has issued on judgment obtained against you on June 30." The next day, tenant gave landlords notice that execution could not issue, since tenant had paid the judgment.

On August 9, tenant received a phone call from a mover. The mover said one of the landlords had retained him to remove tenant's office furnishings on August 11. On August 10, tenant filed a motion to quash the execution. A trial judge entered a temporary stay of the writ of execution until an August 25 hearing could be conducted on the motion.

On August 14, landlords filed an unlawful detainer action. In that pleading, they claimed that on July 1, they were entitled to possession of the office that tenant occupied.

On August 25, the trial court quashed the execution. It also consolidated tenant's wrongful eviction action with landlords' August 14 unlawful detainer action for trial. Following trial, on landlords' unlawful detainer action, the court awarded them rent from

---

* All statutory references are to RSMo 1994.

September 1 and possession of the premises. On tenant's wrongful eviction action, the trial court awarded tenant $918.50 actual damages and $1,500 punitive damages.

## II. Wrongful Eviction

For their first point, landlords allege the trial court erred in finding that they wrongfully evicted tenant. They contend tenant "had continuous access to his office" and that restricting his access to "the office building to regular business hours" did not constitute wrongful eviction.

■ An eviction is either actual or constructive. An actual eviction is "where the landlord, without the tenant's consent, enters and takes possession of the demised premises, *or any part thereof,* during the continuance of the lease, and *excludes* the tenant therefrom." 52 C.J.S. Landlord and Tenant § 450, p. 300 (emphasis added).

■ In the case before us, one of the landlords testified concerning the rental agreement with tenant. She said that tenant rented an office, which included "access to the hallways and to the other amenities in the building, the law library on the lower level." Further, she acknowledged that during his lengthy tenancy, tenant had a key to the outside door to the building. He had this key for "access to the building and the hours when lawyers frequently work after five and on weekends."

Landlords' actions constituted actual eviction. During the term of tenant's month-to-month tenancy, landlords changed the lock to the building. As a result, tenant was excluded from the premises after 5:00 p.m. and before 9:00 a.m. during weekdays. Further, he was excluded from the premises entirely on weekends and holidays. Yet, one of the landlords and tenant both testified that tenant, as an attorney in private practice, during his long tenancy utilized the premises both before and after normal business hours.

■ Landlords argue that they had a right to limit tenant's access because he did not pay rent. However, this argument overlooks the fact that they changed the lock to the building prior to terminating the lease.

Landlords changed the lock to the building on May 5. They did not give the thirty-day statutory notice to terminate the tenancy until May 30, notifying tenant to vacate on or before June 30. *See* § 441.060. Thus, the trial court did not err in finding that landlords wrongfully evicted tenant on May 5. Point denied.

## III. Actual Damages

■ In their second point, landlords allege the trial court erred in awarding tenant "actual damages for time he lost obtaining a stay of execution." They claim this was "in actuality an award for legal work constituting attorneys fees" which is not permitted unless authorized by statute or contract. The trial court awarded $918.50 for actual damages.

The trial court stated how it determined the award. It noted that tenant's testimony and exhibits revealed he had spent $118.50 in changing the locks so he could regain access to the building. This amount is supported by the evidence.

■ The trial court also stated why it awarded $800.00. It acknowledged that it did not have any evidence of tenant's loss of income. However, it stated that it knew tenant had some. Further, it recognized that it could not make any award based on loss of income. Instead, the trial court awarded $800 for the time tenant "lost taking care of the execution and having the stay of execution." This amount is not supported by the evidence and it is disallowed.

We modify the trial court's judgment for actual damages to $118.50.

## IV. Punitive Damages

For their last point, landlords allege the trial court erred in awarding punitive damages to tenant. They contend that tenant is not entitled to these damages as a matter of law because the eviction was provoked by his failure to pay rent.

■ An award of punitive damages is not allowable, even if an eviction was wrongful, if such eviction was provoked by a tenant's failure to pay rent. *Boyd v. Boone Management, Inc.,* 676 S.W.2d 24, 27 (Mo.App. W.D.

1984). In the case before us, tenant admitted that he failed to pay several months rent prior to landlords' first demand that rent be made current. Therefore, landlord argues that even if the eviction was wrongful, tenant is not entitled to punitive damages.

 Tenant recognizes this rule of law. He attempts to justify the award on the basis that his counterclaim was for the tort of abuse of process. An exception to the rule denying punitive damages is recognized "when a plaintiff alleges and proves a breach that amounts to an independent and wilful tort." *Ladeas v. Carter*, 845 S.W.2d 45, 52 (Mo.App. W.D.1992).

Here, tenant's pleading was denominated "wrongful eviction." All of his allegations relate to that action. A wrongful eviction involves a breach of contract by the landlord. *Id.* Tenant did not allege an independent and wilful tort.

Nevertheless, tenant argues that evidence came in without objection concerning abuse of process. Thus, he contends, the pleadings were amended to conform to that evidence. Regardless, the short answer is that the trial court did not award punitive damages on an abuse of process theory.

The trial court explained why it awarded punitive damages. It awarded those damages because "the change of the lock and [the deprivation] of a person in the legal profession from being able to use the office after business hours ... and on Saturday and Sunday" ... "was malicious on the part of" landlords. It is clear that the trial court awarded punitive damages for wrongful eviction, not for abuse of process. Point granted.

We modify the trial court's judgment by reducing the actual damages to $118.50 and eliminating the award of punitive damages. As modified, the trial court's judgment is affirmed. Each party shall pay one-half of the costs.

CRAHAN, P.J., and HOFF, J., concur.