Donna COLLIER, Respondent,

v.

CITY OF OAK GROVE, Missouri, Appellant.

No. SC 88580.

Supreme Court of Missouri, En Banc.

March 18, 2008.

James H. Ensz, Steven T. Majors, Robert O. Jester, Kansas City, for Appellee.

William L. Carr, Kansas City, for Respondent.

WILLIAM RAY PRICE, JR., Judge.

## I. Introduction

The City of Oak Grove challenges the sufficiency of the evidence in support of a jury award to Donna Collier for damages caused by Oak Grove's malfunctioning

sewer system. Although Collier lost much of her personal property, she failed to present sufficient evidence to allow the jury to place a value on her loss. As a result, the judge erred in failing to order remittitur or a new trial.

## II. Facts

This case stems from the substantial sewer problems experienced by the residents of the City of Oak Grove. Plaintiff Donna Collier presents a particularly unpleasant example of these problems. All told, Collier suffered thirteen separate sewage backups between 1992 and 2004.[1] Each of these backups resulted in raw sewage spilling into Collier's basement. The sewage created a nauseating smell so strong that Collier became physically ill.

The sewage also produced another unwanted byproduct: mold. The mold infestation caused Collier serious health problems, eventually becoming so bad that in September of 2004 Collier's doctor ordered her to vacate the house. She was also ordered to destroy all of her personal property.

Collier brought an inverse condemnation claim against the city, seeking damages for real and personal property loss. She also brought a separate claim for her physical injuries. The jury awarded Collier $200,000 on her real and personal property damage claim and $60,000 on her personal injury claim.[2] Prior to submitting the case to the jury, the parties stipulated that any award of prejudgment interest would be decided by the court rather than the jury. On Collier's motion the court awarded prejudgment interest on the inverse condemnation claim at six percent from the date of the first uncompensated backup, June 30, 1993, until the date of judgment in the

amount of $139,528.76. The court overruled motions for remittitur or a new trial. The city now appeals, arguing that the inverse condemnation award was excessive and that the prejudgment interest was inappropriately awarded and excessive.

## III. Standard of Review

Failure to order remittitur is reviewed for abuse of discretion. *Lester v. Sayles*, 850 S.W.2d 858, 871 (Mo. banc 1993). In reviewing whether an award is excessive, evidence is considered in the light most favorable to the verdict. *Gomez v. Construction Design Inc.*, 126 S.W.3d 366, 375 (Mo. banc 2004). "Since the appellate court does not weigh the evidence, it is limited to inquiring whether the jury's verdict is supported by substantial evidence, or in other words, whether the amount of the verdict is responsive to the evidence on the issue of damages." *Heins Implement Co. v. Missouri Highway & Transp. Com'n*, 859 S.W.2d 681, 692 (Mo. banc 1993) (internal citations omitted).

## IV. Analysis
### A.
#### 1.

The Missouri Constitution provides that "private property shall not be taken or damaged for public use without just compensation." Mo. Const. art. I, section 26. This concept encompasses inverse takings, where the government takes or damages land, sometimes unintentionally, without going through an official process. *United States v. Clarke*, 445 U.S. 253, 257, 100 S.Ct. 1127, 63 L.Ed.2d 373 (1980). When a taking occurs the "owner is entitled to be put in as good a position pecuni-

---

1. After the initial backup in 1992, the city sent Collier compensation for the damage. The City has not provided compensation for any of the subsequent backups.

2. The personal injury award is not in dispute on this appeal.

arily as if his property had not been taken." *Olson v. United States,* 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236 (1934).

### 2.

An inverse taking is either permanent or temporary in nature. In a permanent taking the government is granted permanent ownership of the property from the date of the taking. The primary measure of damages in a permanent taking is the lost fair market value of the property. *Akers v. City of Oak Grove,* 246 S.W.3d 917, at 920–21, 2008 WL 713767 (Mo. banc 2008) (No. SC88581, decided March 18, 2008). In a temporary taking the government is treated as having occupied the property for a limited amount of time before returning it to the plaintiff. Damages are calculated as the "diminution in value of the use of occupancy of the property for [the] period taken or damaged." *Id.*

Damages for loss of use are not otherwise available under either type of inverse condemnation claim. *Id.* at 920–21. This is because the property is treated as having been sold/rented at the date of taking. As a result, the plaintiff is unable to suffer from a loss of use of property he no longer had the legal right to use.

### B.

### 1.

Collier's pleadings and testimony do not make clear whether she is asserting a permanent or temporary taking. On the one hand, Collier presents evidence that her house was worth between $90,000 and $100,000 on the open market, but that it is now worthless. This evidence supports a claim for a permanent taking. On the other hand, Collier offers evidence of a $35,000 diminution in value for her house, and also provides costs for repairing the house to its pre-flooding condition. The cost of repair would only be available on a temporary taking theory because under a

permanent taking the city would be awarded title to the house from the time of taking.

Because a total taking would provide Collier with a larger monetary award, viewing the evidence in the light most favorable to the verdict, the Court will proceed under the theory that the jury awarded Collier $100,000 for the total taking of her home.

### 2.

Assuming Collier received $100,000 in real property damage, she must still provide evidence of approximately $100,000 in personal property damage. Evidence of the lost property value must be presented "with reasonable certainty." 22 Am Jur.2d. *Damages* section 721 (2007). In calculating personal property damage an "owner may testify, without further qualification, as to the reasonable market value of an item of personalty which has been destroyed." *DeWitt v. American Family Mut. Ins. Co.* 667 S.W.2d 700, 708 (Mo.banc.1984). When personal property carries sentimental rather than market value, the jury may award damages for the reasonable special value of such articles to their owner. *Ladeas v. Carter,* 845 S.W.2d 45, 53–54 (Mo. App.1992). Such value is not based on the subjective opinion of the plaintiff, but rather is calculated by the jury based upon the facts and circumstances in evidence. *Id.*

In 2002 Collier provided the city with a partial list of destroyed personal property. The items on that partial list were valued at over $5,000. Collier also presented evidence that due to mold all personal property would have to be destroyed. This includes all Collier's furniture, clothing, appliances, photos, books, and any other personal property in the house.

Collier's testimony on the value of this additional personal property is unclear.

Initially counsel asked if Collier had "an estimate or opinion on everything that needs to be thrown out ... or has been destroyed by the flooding ... since, say 2001?" Tr. at 408. Collier put that estimate at $10,000. *Id.* Based on counsel's question, this estimate should include the $5,000 worth of items on the 2002 partial list, as well as all other items of personal property she has lost. However, immediately following the $10,000 estimate the following exchange occurred:

Q: Are there other items at this point that you're unsure of as to whether or not they have to be destroyed or thrown out? For example, your furniture upstairs—

. . . .

A: I mean, my furniture upstairs, you know, everything in my house.

*Id.* at 409. This exchange would seem to indicate that the $10,000 figure was not meant to be inclusive.

Taking the evidence in the light most favorable to the verdict, this Court will assume that the $10,000 figure did not include all of Collier's lost property. Nonetheless, to reach $200,000 in damages the jury would have had to value the remaining unspecified property at approximately $85,000.[3]

Here, Collier's potential property loss includes her furniture, clothing, appliances, photos, books, and any other personal property in the house. Collier did not provide any further information on the type and amount of property lost. She also failed to provide an estimate of value. Although we consider the evidence in the light most favorable to Collier, there is no getting around the fact that she failed to present sufficient evidence to allow a jury to determine the value of this property loss with "reasonable certainty." 22 Am Jur.2d. *Damages* section 721 (2007).

### 3.

Two options exist for a trial court to remedy an excessive verdict. If the award is "so grossly excessive as to indicate bias and prejudice on the part of the jury," then the judge must order a new trial. *Worley v. Tucker Nevils, Inc.,* 503 S.W.2d 417, 423 (Mo. banc 1973). If no prejudice is apparent, then the judge may instead order remittitur pursuant to section 537.068.[4]

Oak Grove does not argue that the excessive verdict was a result of jury bias. The trial judge therefore had the option of remedying the excessive verdict by either remittitur or a new trial. In ordering neither, the judge abused his discretion.

### C.

Finally, the city also challenges the award of pre-judgment interest in this case. Because the case must be reversed and remanded due to the insufficiency of evidence to support the amount of actual damages awarded, we need not address this issue in detail. In *Akers v. City of Oak Grove,* at 921–22, we have outlined the various considerations to be taken into account in the assessment of prejudgment interest in inverse condemnation cases.

### V. Conclusion

The judgment is reversed and the case is remanded.

---

3. This assumes the $85,000 in damages is separate from both the initial 2002 list of approximately $5,000 in damages and also from Collier's testimony of $10,000 in damages.

4. Section 537.068 provides for remittitur if "after reviewing the evidence in support of the jury's verdict, the court finds that the jury's verdict is excessive because the amount of the verdict exceeds fair and reasonable compensation for plaintiff's injuries and damages."

STITH, C.J., TEITELMAN, LIMBAUGH, RUSSELL and WOLFF, JJ., and SWEENEY, SR.J., concur. BRECKENRIDGE, J., not participating.